Felix PETRILLI, Plaintiff–Appellant,

v.

David B. DRECHSEL, as Plan Administrator of the Inland Steel Company Pension Plan, and Julius M. Scheffers, as Plan Administrator of the Inland Steel Company Severance Plan, Defendants–Appellees.

No. 89–3170.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1990.

Decided Aug. 20, 1990.

---

Daniel J. Fumagalli, Chicago, Ill., for plaintiff-appellant.

Lawrence L. Summers, Michael I. Richardson, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

The plaintiff, Felix Petrilli, worked for the Inland Steel Company from 1960 until 1986, when he left the company incident to a major corporate reorganization. Following his departure he applied for and was denied pension and severance benefits. The defendants, the administrator of Inland's pension plan and the administrator of Inland's severance plan, each determined that Petrilli had left the company voluntarily and was therefore ineligible for severance or pension benefits. Petrilli then brought this suit in United States District Court alleging wrongful denial of benefits and breach of fiduciary duty against the plan administrators under Sections 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3),[1] and breach of contract against In-

---

1. Those sections provide:

Civil Enforcement
(a) Persons empowered to bring a civil action. A civil action may be brought—

(1) by a participant or beneficiary—

\* \* \* \* \* \*

B) to recover benefits due him under the terms of his plan, to enforce his rights under

land under Illinois law. The district judge dismissed the breach of fiduciary duty and contract claims[2] and granted summary judgment to the administrators on the wrongful denial of benefits claims. Petrilli appeals from the district court's dismissal of the breach of fiduciary duty claims and also contends that the district court erroneously applied the "arbitrary and capricious" standard in evaluating the administrators' decisions to deny Petrilli's applications for severance and pension benefits.

We affirm the dismissal of the breach of fiduciary duty claims and remand the denial of benefits claims for reconsideration under a *de novo* standard of review.

## I. Background

In 1985 Inland took steps to implement a reorganization that was to include the elimination of a substantial number of positions at its corporate headquarters. As part of that initiative, defendant Julius Scheffers, who was both General Manager of Human Resources and Development and Administrator of the Inland Severance Plan, asked Petrilli, who was then Director of Corporate Health Services, to prepare plans for the restructuring of the Corporate Health Services Department. Petrilli was told that the restructuring plan should include consideration of whether his own position should be eliminated. Petrilli's plan recommended, among other things, that his duties be transferred to the position of Manager, Human Resources Planning, and that he assume that position. This recommendation was accepted and the transfer occurred. In this new position Petrilli continued to report to Scheffers, and the new position continued to be targeted for possible elimination.

During this period, Scheffers, defendant David Drechsel, who was Manager of Retiree Benefits as well as Administrator of the Inland Pension Plan, and Petrilli were all under the supervision of O. Robert Nottlemann, Vice Chairman of Inland. On February 14, 1986, Petrilli met with Vice Chairman Nottlemann. Accounts of that meeting vary, but at oral argument before this Court the defendants' attorney agreed to be bound by the account of the meeting presented in the plaintiff's affidavit.[3] That affidavit, at paragraphs 11–15, contains the following account of the events leading to Petrilli's departure from Inland. During January 1986, Petrilli was solicited by an executive search firm, interviewed, screened, and subsequently offered a position outside Inland on February 13, 1986. In light of his recent re-assignment and the possibility that his position at Inland would be terminated, Petrilli expressed interest in the offer, but indicated that he would have to discuss the matter with his supervisors at Inland. Consequently he arranged a meeting with Vice Chairman Nottlemann on February 14, 1986. At that meeting, Petrilli told Nottlemann of the offer. Nott-

the terms of his plan, or to clarify his rights to future benefits under the terms of the plan;

\* \* \* \* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

**2.** Petrilli has not appealed the dismissal of the state law contract claim and it is therefore not before us.

**3.** This was a sensible concession in light of the fact that only Petrilli and Nottlemann were present at the meeting and the record contains no sworn testimony from Nottlemann. The sole evidence that had previously been offered to rebut Petrilli's version of the meeting was a handwritten notation on a memorandum from Scheffers to Nottlemann dated February 25, 1986. The memorandum contains Scheffers' account of Petrilli's account of the Petrilli–Nottlemann meeting of February 14, 1986. The memorandum includes the following language that is the subject of the marginal notation.

[Petrilli] said that in his February 14 discussions with [Nottlemann] \* \* \* [that Nottlemann] stated that it was conceivable that through further reorganization efforts in the corporation, (1) the [Human Resources] function as we now know it may be eliminated or (2) the particular position now held by [Petrilli] may be eliminated and, therefore, there would be no job for [Petrilli].

The words "there would be no job for [Petrilli]" have been underlined by hand and the margin contains the notation (allegedly Nottlemann's), "Did not say this! [Petrilli] is valuable employee and would be offered another assignment."

lemann confirmed that a detailed study was underway concerning the reorganization of the Human Resources area. Nottlemann further stated that William Gray (another human resources supervisor) and Julius Scheffers had been assigned to this project, and that as a result of the study Petrilli's department would be eliminated, as would his job. Nottlemann made no assurances that Petrilli would be re-assigned or that any re-assignment would entail job responsibilities similar to those Petrilli then exercised. According to his affidavit, Petrilli interpreted Nottlemann's statements to mean that he had no choice but to accept the job offer because termination from Inland was imminent. Petrilli then asked Nottlemann about his severance benefits, to which Nottlemann replied, "You have resigned. Severance benefits are only for those who are involuntarily let go." Upon Petrilli's request, Nottlemann said he would reconsider this position, and promised that Petrilli would be treated no differently than other employees who had recently left Inland.

Shortly thereafter Petrilli took part in the customary formal sign-out process for employees leaving Inland. Petrilli contends that a form labelled "Termination Clearance" was altered after he signed it, by erasing a check mark in a box next to the word "retirement" and inserting a check mark in a box next to the word "resignation." In addition, Petrilli contends that when he refused to check a box marked "quit" on another form, Drechsel checked the "quit" box for him over his objections.

During this period Petrilli was aware that a former employee named Warren Bacon had left the company voluntarily but had received full severance and pension benefits. Later, another former employee, Phil Keckich, told Petrilli that upon learning of the planned termination of his position, Keckich had been permitted to leave the company by way of "layoff," so as to preserve his severance benefit. Approximately a month after leaving Inland, Petril-

li arranged to meet with the Chairman of Inland Steel, Frank W. Luerssen, to discuss Petrilli's departure from Inland and to bring to Luerssen's attention the allegedly more favorable severance arrangements offered to other departing employees. A short meeting with Luerssen took place on April 30, 1986. In a letter dated May 16, 1986, Luerssen advised Petrilli that he had reviewed Petrilli's situation and determined that he had been "handled fairly and consistently with policy and practice."

On May 29, 1987, Petrilli formally applied for a Rule-of-65 pension benefit and a severance benefit.[4] The Rule-of-65 benefit is available to otherwise qualified employees "whose continuous service [has been] broken by reason of layoff or disability * * * and who has not been offered suitable long-term employment." Inland Pension Plan, Section 2.8. The severance benefit is available to "employees who are terminated as a result of a permanent shutdown of a plant or part of a plant, or a permanent reduction in workforce (job elimination)." Inland Severance Allowance Policy at 1.

Defendants Scheffers and Drechsel, acting in their capacities as severance and pension plan administrators respectively, denied Petrilli's request for severance and Rule-of-65 pension benefits on the grounds that Petrilli had resigned and therefore had not been laid off or terminated. According to their affidavits, Scheffers and Drechsel based their denials on the notations on Scheffers' February 28, 1986, memorandum (see *supra* note 3), the investigation and conclusions of Chairman Luerssen as reflected in his May 16, 1986, letter to Petrilli, and their reading of the language of the respective benefit plans. Neither Scheffers nor Drechsel claimed to have considered the allegedly disparate treatment of any other former employees nor Petrilli's allegations of the alterations in his sign-out documents.

---

**4.** Petrilli's entitlement to his regular vested deferred pension benefits is not disputed and

therefore is not at issue in this case.

On September 1, 1987, Petrilli filed a request for a review of the denial. Letters dated October 30, 1987, from Scheffers and Drechsel, informed Petrilli that a review had been conducted and that the denials were affirmed. Petrilli filed the present suit on July 14, 1988. After the suit was filed the Supreme Court handed down its decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), which altered the prevailing standard of federal district court review of plan administrators' denials of ERISA benefits. The district court determined that the denial of Petrilli's benefits did not fall within the scope of the *Bruch* rule. The court therefore evaluated the administrators' decisions under the pre-*Bruch* arbitrary and capricious standard of review and granted the defendants' motion for summary judgment. Petrilli's primary contention on appeal is that the district court's failure to apply the *Bruch* standard resulted in an erroneous grant of summary judgment in favor of the defendants. Petrilli therefore asks that the case be remanded for reconsideration under *Bruch*.

## II. Discussion

### A. Wrongful Denial of Benefits

#### 1. *Bruch*

ERISA does not specify a standard of review to be used by the district courts in evaluating benefit denials by plan administrators. Prior to the Supreme Court's opinion in *Bruch* the majority of the circuits accorded great deference to the decisions of benefit plan administrators, reversing their decisions only if they were "arbitrary and capricious." See, *e.g., Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 208 (7th Cir.1985), and cases cited therein. In 1986, a case came before the Third Circuit Court of Appeals in which the employer, Firestone Tire & Rubber Company, was itself the administrator of an unfunded severance plan. *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134 (1987). Acting in its capacity as administrator, the employer had denied severance benefits to several employees of a Firestone division that was sold as a going concern to another compa-

ny. Firestone denied the benefits on the ground that the severance plan provided for benefits where "service was discontinued * * * because of a reduction in work force * * *," and that the discontinuation of the employees' service due to the sale of the division did not constitute a "reduction in work force." The district court affirmed the denial of benefits under the prevailing arbitrary and capricious standard of review. On appeal the Third Circuit held that where an employer was itself the administrator of an unfunded pension plan, the employer's desire to save the company from increased funding obligations called into question his impartiality, and that under such circumstances *de novo* review was appropriate.

The Supreme Court upheld the Third Circuit's *de novo* review requirement, but on different grounds. The Supreme Court reasoned that circuit court use of the arbitrary and capricious standard of review had been based on an improper analogy to the Labor Management Relations Act. The Court unanimously rejected that analogy and instead held that general principles of trust law should govern the choice of a standard. Since a trustee's decisions in discharging his duties under a trust instrument are only accorded deferential treatment where the instrument itself grants the trustee discretion, the Court concluded that deference to an ERISA benefit plan administrator's decisions would only be appropriate where the benefit plan at issue granted discretion to the administrator and that otherwise *de novo* review is appropriate. 109 S.Ct. at 953–956.

#### 2. The District Court's Interpretation of *Bruch*

Petrilli's case is before us today because of a disagreement over the scope of the decision in *Bruch*. Unremarkably, the *Bruch* holding has given rise to a spate of cases in which the circuit courts have been asked to determine whether particular language in a benefit plan constitutes a grant of discretion to a plan administrator such that *de novo* review will not apply. Those courts have presumed that only such a

grant of discretion can remove the obligation to review the denial *de novo.*

But a narrower reading of *Bruch,* the one adopted by the district court here, recognizes two distinct sets of circumstances in which *de novo* review will not be appropriate. That reading of *Bruch* focuses on an introduction. to the Court's analysis, which states: "The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits *based on plan interpretations."* 109 S.Ct. at 953 (emphasis added). According to the district court, the underscored words indicate that the Supreme Court intended to exempt from *de novo* review not only the decisions of administrators whose plans granted them discretion, but also all denials not based on plan interpretations. In other words, according to the district court, if a denial was not based on a "plan interpretation," then the court's review must be deferential, and the court need not reach the question of whether or not the plan at issue vested the plan administrator with discretion. Since we conclude that the denial of Petrilli's benefits was based on a plan interpretation, we need not choose between these competing interpretations of *Bruch.* We will nevertheless consider the competing arguments briefly, since the district court's opinion turned on the choice of the narrower reading of the case.

The district court's reading of *Bruch* is plausible. The Third Circuit in *Bruch* explicitly reserved comment on the proper standard of review for factual determinations leading to benefit denials. 828 F.2d at 144 n. 9 ("It should be noted that we also do not deal here with a determination of fact by a plan administrator. We leave for another day the definition of the context, if any, in which courts should defer to such a determination."). It could therefore be argued that the Supreme Court's opinion is similarly restricted, and the language intro-

ducing the Court's discussion of the subject supports such a conclusion.

On the other hand, a later recitation of the holding in the *Bruch* opinion does not contain the limiting language: "[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 109 S.Ct. at 956. This later recitation of the holding strongly suggests that the Court intended *de novo* review to be mandatory where administrators were not granted discretion, regardless of whether the denials under review were based on plan interpretations. If this were not the intent, the Court could simply have omitted the words "to determine eligibility for benefits," from the above-quoted holding and confined the "unless" clause to "unless the benefit plan gives the administrator or fiduciary discretionary authority to construe the terms of the plan." Finally, the rationale supporting the Court's adoption of *de novo* review provides no basis for discriminating between denials based on plan interpretations and denials for other reasons. By analogy to trust law, the rationale focuses on whether the written terms of the plan confer discretion on the administrator, and not on the type of decision—factual or interpretive—that the administrator is rendering.

We have found no circuit court case that has explicitly addressed this issue,[5] and the district courts that have considered it have split. See, *e.g., Questech, Inc. v. Hartford Accident and Indemnity Co.,* 713 F.Supp. 956, 963 (E.D.Va.1989) ("[I]t seems unlikely that Congress intended federal courts to review *de novo* every factual determination inherent in coverage decisions, [a]nd [*Bruch*], carefully read, does not require this."); *Buchholz v. General Electric Employee Benefit Plan,* 720 F.Supp. 102, 103 n. 1 (N.D.Ill.1989) (apparent limitation in

---

**5.** Contrary to the defendants' assertion, our holding in *Nichol v. Pullman Standard, Inc.,* 889 F.2d 115 (7th Cir.1989), does not support a limitation on the reach of the *Bruch* holding to cases involving plan interpretations. *Nichol* acknowledges *de novo* review for denials of benefits based on plan interpretations but does not

limit *de novo* review to such denials. More importantly, Nichol did not argue, and the record did not reveal, that the district court had applied an arbitrary and capricious rather than a *de novo* standard of review in concluding that Nichol had voluntarily waived his long-term disability benefits.

*Bruch* to denials based on plan interpretations "is indeed only apparent. * * * [T]he rationale behind the holding in *Bruch* is applicable to other denials under § 1132(a)(1)(B) * * *.").[6]

As we previously noted, resolution of this question must wait until another day, since we are persuaded that the parties here do not disagree about the content of the Petrilli–Nottlemann meeting but rather about its import. Thus we are not faced here with a factual question, but, as in *Bruch*, with an interpretive one. In *Bruch* the question was whether the sale of a division was a "reduction in work force." Here the question is whether a voluntary departure, following a meeting with a supervisor in which an employee is told that his department and job are to be eliminated, is a "layoff" within the meaning of the Inland pension plan and a "termination" within the meaning of the Inland severance plan. Thus, even if *Bruch* is meant to apply only to denials based on plan interpretations, these were such denials and *de novo* review would be required unless the plans contain language giving discretion to the administrators.

### 3. Administrator Discretion

■ The conclusion that the benefit denials in this case involved plan interpretations does not end the analysis, since it must be determined whether Inland's pension and severance plans grant discretion to the plan administrators. With respect to Inland's severance plan this determination is simple. The defendants concede that there is no grant of discretion in that plan. With respect to the pension plan the parties are not in accord. Petrilli contends that the pension plan, like the severance plan, contains no grant of discretion. The defendants contend that the language in Section 7.5 of the pension plan, which prohibits participants from challenging administrators' determinations without complying with established procedures and makes the administrators' decisions "final and binding," constitutes a grant of discretion. Def.Br. at 23.

This Court has previously been asked to determine whether particular language in a benefit plan constitutes a grant of discretion to an administrator. We have stated that "magic words (such as 'the committee has discretion to ...') are unnecessary." *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust*, 901 F.2d 1369, 1371 (7th Cir.1990) (referring to the holding in *Bali v. Blue Cross and Blue Shield Association*, 873 F.2d 1043, 1047 (7th Cir.1989), that plan language permitting administrators to decide whether an applicant is "disabled" using "medical evidence satisfactory to the committee," constitutes a grant of discretion). In addition, this Court has held that a plan that empowers the administrators "to construe and interpret the plan," brings the plan within *Bruch*'s exception to *de novo* review. *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990).

Acknowledging the statement in *SwedishAmerican* that "magic words" are not required, we are nevertheless unable to find that the language proffered by the defendants in this case constitutes a grant of discretion to the plan administrators. As in *Bruch*, there is simply no evidence here that, "the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." 109 S.Ct. at 954. In addition, the venerable maxim *expressio unius est exclusio alterius* is applicable here. Section 2.8 of the Inland pension plan, which sets forth the eligibility requirements for Rule-of–65 Retirement, explicitly grants plan administrators the discretion to determine whether the employee has been offered "suitable long-term employment," but does not similarly provide for discretionary interpretation of the word "layoff." Petrilli App. at 27. We therefore conclude that neither the severance plan nor the pension plan confers discretion on the plan administrators so as to exempt their decisions from the *de novo* review mandated by *Bruch*. Thus the case must be remanded to the district court for a reevaluation of the administrators' denials of Petrilli's severance

---

**6.** The district court's reliance on *Teeter v. Supplemental Pension Plan of Consolidated Rail Corp.*, 705 F.Supp. 1089 (E.D.Pa.1989), is misplaced since that case interpreted the Third Circuit's holding in *Bruch*, and not the Supreme Court's holding.

and pension benefits under the *de novo* standard set forth by the Supreme Court in *Bruch.*[7]

### 4. Nature of *De Novo* Review

After the briefs were filed in this case the parties submitted supplemental authority suggesting the emergence of a circuit split over the appropriate nature of *de novo* review in ERISA benefit denial cases. Compare *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990) (*de novo* review limited to consideration of the facts before the plan administrator at the time of the denial), with *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir.1989) (limitation of consideration to facts before the plan administrator at the time of the denial is "contrary to the concept of *de novo* review."). The scope of *de novo* review was not an issue that was fully briefed or argued in this case and we decline to elaborate on it here. At the very least, however, the district court on remand must evaluate for itself, without deferring to the determinations of the plan administrators, whether Petrilli's departure constituted a "termination" or a "layoff" within the meaning of the Inland severance and pension plans.

### B. Dismissal of Breach of Fiduciary Duty Claims

The district court's dismissal of Petrilli's breach of fiduciary duty claims was based on the Supreme Court's holding in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), that individuals may not recover damages against plan fiduciaries under Section 409 of ERISA, 29 U.S.C. § 1109, for injuries inflicted by the fiduciaries' alleged mishandling of the individual's own benefit claims.[8] Petrilli contends that he should be allowed to pursue his breach of fiduciary duty claims under Section 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), which provides for civil actions to "obtain other appropriate equitable relief." This contention is consistent with this Court's holding in *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 210 (1985), in which we acknowledged the Supreme Court's limitation on actions under Section 409 of ERISA, but left open the possibility of extra-contractual recovery under Section 502 of ERISA.[9] See also *Bartucca v. Katy Industries, Inc.*, 668 F.Supp. 111 (D.C. Conn.1987) (*Russell* does not preclude an action for breach of fiduciary duty under Section 502 of ERISA); Note, *Participant and Beneficiary Remedies Under ERISA: Extracontractual and Punitive Damages After* Massachusetts Mutual Life Insurance Co. v. Russell, 71 Cornell L.Rev. 1014 (1986) (same).

Nevertheless, we affirm the district court's dismissal of Petrilli's fiduciary duty claims, since the sole extra-contractual damages he seeks are punitive damages, and the allegations in his complaint do not support a claim for such damages. Furthermore, relying on the Supreme Court's holding in *Bruch* that ERISA is to be con-

---

7. We need not reach Petrilli's contention that the defendants' decisions were tainted by a conflict of interest, since under *Bruch* conflict of interest is only relevant if the plan at issue does confer discretion on the administrator such that *de novo* review does not apply. 109 S.Ct. at 956.

8. Section 409(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to other such equitable relief as the court may deem appropriate, including removal of such fiduciary.

9. In *Pokratz* we affirmed the district court's summary disposition of the plaintiff's claim under Section 409 of ERISA, noting that the plaintiff had "not suggested any other source of entitlement to extra-contractual damages." This quoted language was followed by a "cf." to the majority opinion in *Russell*, where the Court states, "Because respondent relies entirely on § 409(a), and expressly disclaims reliance on § 502(a)(3), we have no occasion to consider whether any other provision of ERISA authorizes recovery of extracontractual damages." *Russell*, 473 U.S. at 139 n. 5, 105 S.Ct. at 3088 n. 5. Hence it is clear that neither *Russell* nor *Pokratz* forecloses Petrilli's ability to state a claim for extra-contractual damages under Section 502(a)(3) of ERISA.

strued consistently with the common law of trusts, we note that punitive damages are generally unavailable in the trust context. See, *e.g.*, Note, *supra* at 1028–1029 ("The vast majority of courts have refused to award such damages.").

### III.   Conclusion

Although extra-contractual damages may be recoverable under Section 502 of ERISA, Petrilli's complaint does not support a claim for punitive damages against the administrators of the Inland pension and severance plans.  Therefore, the district court was correct in dismissing Petrilli's breach of fiduciary duty claims.

The district court's decision to grant the defendants' motion for summary judgment on Petrilli's benefit denial claims is reversed, and the case is remanded for re-evaluation of those claims under a *de novo* standard of review.

Circuit Rule 36 shall apply on remand.