James A. GERMANY, Plaintiff,

v.

OPERATING ENGINEERS TRUST
FUND OF WASHINGTON,
D.C., Defendant.

Civ. A. No. 91–1797(GHR).

United States District Court,
District of Columbia.

March 9, 1992.

Patrick A. Malone, Stein, Mitchell & Mezines, Washington, D.C., for plaintiff.

William P. Dale, McChesney, Duncan & Dale, Washington, D.C., for defendant.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

This is an action to recover benefits allegedly due and to clarify rights to future benefits from a health plan, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Before the Court are the cross-motions for summary judgment of plaintiff James A. Germany, and defendant Operating Engineers Trust Fund of Washington, D.C. ("the Fund"), a self-insured employee benefit plan established under 29 U.S.C. § 1102 of ERISA. Counsel for the parties have been heard in oral argument. For the reasons set forth below, the Court will grant plaintiff's Motion for Summary Judgment and deny defendant's Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

As he was searching for tools in the trunk of his disabled car on April 29, 1990, a car struck Mr. Germany from behind.

His right leg was crushed, and his left leg also suffered extensive trauma. Mr. Germany was hospitalized at the Prince George's Hospital Center from that date until September 3, 1990. During his hospitalization, Mr. Germany underwent eighteen separate surgical procedures. As a result, he incurred medical bills, including hospitalization expenses, in excess of $197,000.00.

Mr. Germany is a participant in the Operating Engineers Trust Fund of Washington, D.C., also known as the Operating Engineers Local No. 77 Trust Fund. The Fund is a self-insured employee health benefit plan. Plaintiff's counsel stated at oral argument, and defendant's counsel did not dispute, that the maximum benefits payable by the Fund to a participant in the plan is $60,000 per calendar year. Mr. Germany may also recover, in a third-party liability claim, as much as $50,000 from the driver and owner of the car that struck him, based on the latter's insurance coverage. *See* Pl.'s Ex. 8, at 4. His contention, which defendant does not seriously dispute, is that a third-party recovery of $50,000 will be inadequate to compensate him for his medical expenses, pain and suffering, and lost wages,[1] as a result of his accident.

Pursuant to 29 U.S.C. § 1021 of ERISA, the Fund has published and distributed to participants a Summary Plan Description ("SPD"), which it has also filed with the Secretary of Labor. *See* Pl.'s Ex. B. The SPD contains a provision giving the Fund subrogation rights with regard to a participant's third-party recovery for injuries and/or death for which a benefit is payable under the plan. *See* Pl.'s Ex. 1, at 11. According to this provision, "[e]ach participant to whom the subrogation provision may apply will be asked to sign an agreement with respect to the subrogation provision." *Id.* It is the policy of the Fund not to make payments for medical expenses until such a participant executes the subrogation agreement to which the clause quoted above refers. *See* Dep. of Simone L. Ornold, Pl.'s Ex. A, at 12; Pl.'s Ex. 11.

Mr. Germany declines to execute the subrogation agreement presented to him by the Fund. He contends—and this is the central dispute of this lawsuit—that the subrogation agreement expands the rights of the Fund to a participant's third-party recovery beyond what is claimed in the subrogation provision contained in the SPD. The latter document, according to Mr. Germany, limits the Fund's subrogation rights only to those circumstances in which a participant might enjoy a double recovery, which would not apply to Mr. Germany because of the catastrophic extent of his damages. Mr. Germany further argues that the subrogation agreement is not itself a part of the plan, as summarized in the SPD, so that the Fund's conditioning of payment of benefits on his execution of this agreement violates ERISA's disclosure and reporting requirements. *See* 29 U.S.C. §§ 1021, 1022.

In his lawsuit, Mr. Germany alleges that the trustees have failed to process his claims for benefits and to provide him with benefits to which he is entitled, in violation of ERISA § 404(a), 29 U.S.C. § 1104(a). He seeks a declaration from the Court that he has the right not to be bound by the subrogation agreement, and that he has the right to receive future benefits for which he is eligible under the terms of the plan as a result of his injury, which are not subject to defendant's subrogated claim for any part of his anticipated $50,000 recovery. He also seeks an accounting from the Fund, and an injunction to prevent the Fund from enforcing a subrogation document that differs from the terms included in the SPD.[2]

Because Mr. Germany has refused to execute the subrogation agreement, the Fund, for its part, has declined to make any payments for medical expenses he incurred as a result of the accident. *See* Pl.'s Ex. 7. The Fund has also declined to waive its

---

**1.** It is uncontested that Mr. Germany has been unable to work since the accident. Prior to the accident, Mr. Germany earned approximately $18,000 per year as a heavy-equipment operator.

**2.** In the alternative, Mr. Germany seeks an accounting of his benefits and payment from the Fund of the present value of all benefits in excess of $50,000.

subrogation rights, *see id.,*[3] or consider an alternative subrogation agreement proposed by Mr. Germany. The Fund insists that the subrogation agreement *is* part of the plan as set forth in the SPD, and that the agreement in no way broadens the Fund's subrogation rights as disclosed to Mr. Germany in the SPD.

## II. STANDARD OF REVIEW

The dispute in this case thus turns on the interpretation of the subrogation rights set forth in the provision contained in the SPD and in the separate subrogation agreement. In the Court's view, there are no "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, summary judgment is proper.

▆▆▆ The parties agree that it is the *trustees'* interpretation of the scope of the Fund's subrogation rights under the plan that is at issue here. The SPD contains an express and broad grant of discretion to the trustees to interpret the plan's terms: "In the application and interpretation of this Plan, the decision of the Board of Trustees shall be binding on all parties, including, employees, employers, Union, claimants, and beneficiaries." Pl.'s Ex. 1, at 4. When trustees exercise discretionary powers to deny benefits or construe the terms of a plan, a deferential standard of review must be applied. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 115, 109 S.Ct. 948, 954, 956, 103 L.Ed.2d 80 (1989). The court of appeals for this circuit has analogized this deferential standard to the "arbitrary and capricious" test usually applied in the context of public administrative law. *See Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1454 (1992).[4] When applied to the fiduciary responsibilities of ERISA trustees, this standard requires a choice between reasonable alternatives, or a reasonable interpretation of the plan. *See Retirement and Sec. Program for Employees of Nat'l Rural Elec. Coop. Ass'n v. Oglethorpe Power Corp. Retirement Income Plan,* 712 F.Supp. 223, 226–27 (D.D.C.1989). However, "[i]t is for the trustees, not the courts, to choose between two reasonable alternatives." *Id.* at 227 (quoting *Edwards v. Wilkes–Barre Publishing Co. Pension Trust,* 757 F.2d 52, 57 (3d Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985)). This Court believes, however, that *Bruch* did not alter the rule in this circuit, that the trustee's interpretation of the controlling law—the ERISA statute—is entitled to no deference, and may be reviewed *de novo* by this Court. *See Holt v. Winpisinger,* 811 F.2d 1532, 1535–36 (D.C.Cir.1987); *see also, Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1099–1100, 1101–03 (5th Cir. 1990) (analyzing the scope of *Bruch,* finding that *Holt* remains good law, and reviewing *de novo* whether appellant was an "employee" under the ERISA statute).

The following guidelines have evolved within this circuit to assist courts in applying the arbitrary and capricious standard in an ERISA context.

In determining whether a fiduciary's interpretation of the terms of a plan document is arbitrary or capricious, four factors should be considered: (1) whether the interpretation is contrary to the language of the plan; (2) whether it is consistent with the purposes of the plan; (3) whether it is consistent with the purposes of the particular provision itself; and (4) whether it is consistent with prior

---

**3.** Counsel for defendant at oral argument indicated that the Fund may consider waiving its subrogation rights at a later date, *after* Mr. Germany signs the subrogation form.

**4.** While other courts have rejected the wholesale importation into ERISA of the arbitrary and capricious standard that this analogy suggests, preferring instead to follow *Firestone's* resort to the common law of trusts for a standard of review, they reach the same result when, as here, the grant of discretion to plan trustees to construe or interpret the terms of the plan is unrestrained. *See Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1141–42 (7th Cir.1990) (finding that the arbitrary and capricious standard applies under the common law of trusts when a trustee's discretion is unrestrained or subject only to a good faith limitation).

interpretations and whether beneficiaries were on notice of the interpretation.

*Foltz v. U.S. News & World Report, Inc.,* 663 F.Supp. 1494, 1514 (D.D.C.1987) (citing *Donovan v. Carlough,* 576 F.Supp. 245, 249 (D.D.C.1983), *aff'd mem.,* 753 F.2d 166 (D.C.Cir.1985)), *aff'd,* 865 F.2d 364 (D.C.Cir.), *cert. denied,* 490 U.S. 1108, 109 S.Ct. 3162, 104 L.Ed.2d 1024 (1989); *see also, Oglethorpe Power,* 712 F.Supp. at 226–27 (finding these factors consistent with the holding in *Firestone Tire & Rubber Co. v. Bruch*). The application of these factors is not formulaic, however, and the weight given to each will vary according to the context of the case. *See Carlough,* 576 F.Supp. at 249. Thus, under this standard of review, the Court must grant plaintiff's summary judgment motion, and deny defendant's, if, in light of the four factors set forth above, it finds the trustees' interpretation of the Fund's subrogation rights to be unreasonable.

III. ANALYSIS

A. *Whether the Trustees' Interpretation of the Subrogation Agreement is Contrary to the Language of the Plan.*

■ The full text of the subrogation provision contained in the SPD is as follows:

SUBROGATION

When injury or injuries and/or death (for which any benefits are now payable under this Plan) are caused under circumstances which create a legal liability with some other person or party, the Fund shall be subrogated to the participant's right of recovery therefor to the extent of the Fund's payment to the participant.

Subrogation means that the Plan can regain, by legal action if necessary, benefits paid by it to the participant or that person's insurance company or plan. The Trustees believe subrogation will result in savings to the Plan for the benefit of all participants because the cost of treatment for such conditions will be paid by the person who is responsible for or contributed to the condition for which benefits are paid by the Plan, or his insurer.

Under the Plan's subrogation provision, a participant has the following obligations:

(a) To take such action and cooperate with Plan representatives as may be necessary or appropriate to recover from any third party, as damages, those payments made by the Plan.

(b) Any money recovered from third persons for expenses paid by the Plan should be paid immediately to the Plan.

(c) To not do anything to impair, prejudice or discharge the Plan's right of subrogation.

If any participant or dependent has any questions or if you are asked to waive any rights covering any conditions for which you have received or expect to receive payment from the Plan, contact the Plan's Administrative Agent as soon as possible.

As a result, payment collected first from the Fund and then again from some other person or party, a double payment to the participant, will be avoided.

Each participant to whom the subrogation provision may apply will be asked to sign an agreement with respect to the subrogation provision.

Pl.'s Ex. 1, at 11. The trustees of the Fund contend that this statement of the Fund's subrogation rights is wholly consistent with the admittedly "more explicit" language contained in the separate subrogation agreement. *See* Def.'s Mem. in Supp. of Mot. for Summ. J., at 14. The relevant portion of that subrogation agreement states as follows:

1. Claimant shall repay to the Fund the full amount of all Fund benefits paid to him/her, or in his/her behalf, in connection with the aforementioned accident in the event that he, or anyone acting on his behalf, receives a recovery from any other party or parties. Claimant further agrees that the amount to be repaid shall not be reduced for any reason, including but not limited to payment of a fee to an attorney for the prosecution of his claim against the other party or parties. In

the event that the amount of any such recovery is less than the total amount of all Fund benefits paid to him, or in his behalf, Claimant agrees to repay to the Fund the full amount of such recovery. Pl.'s Ex. 2. It is clear that, although the subrogation provision in the SPD makes reference to the separate subrogation agreement, it does not disclose the latter's terms, nor does the subrogation agreement appear as an attachment to the SPD itself.

The Court is satisfied that the subrogation provision disclosed in the SPD plainly limits the Fund's subrogation rights to circumstances in which a claimant would otherwise receive a double payment. The penultimate paragraph of the SPD clearly states this:

> As a result [of a participant's fulfillment of his obligations], payment collected first from the Fund and then again from some other person or party, a double payment to the participant, will be avoided.

Pl.'s Ex. 1, at 11. This purpose is reflected in language in the provision defining the obligations of participants:

> Under the Plan's subrogation provision, a participant has the following obligations:
>
> .    .    .    .    .
>
> (b) *Any* money recovered from third persons *for expenses paid by the Plan* should be paid immediately to the Plan.

*Id.* (emphasis added). The clear implication of this passage, when read in light of language barring double payment, is that a recovery for *other* expenses, *not* paid by the plan, lies outside of the Fund's subrogation rights.

In contrast, the Fund urges the Court to read the SPD in light of the terms of the separate subrogation agreement. This document clearly claims entitlement to *any* third-party recovery in order "to repay to the Fund the *full amount* of all Fund benefits paid*" to the participant. Pl.'s Ex.

2 (emphasis added). The subrogation agreement stipulates, moreover, that "the amount to be repaid shall not be reduced for any reason." *Id.* The Court finds that this exposition of the Fund's subrogation rights does not say the same thing as the disclosed subrogation provision. It is true that the first paragraph of the subrogation provision is written in broad language, similar to that used in the subrogation agreement. But the SPD's subrogation provision must be read as a whole, and effect must be given to all of its terms. The unqualified language of the agreement is inconsistent with the more limited language of the SPD provision, which clearly confines subrogation to circumstances in which a double payment is possible.

■ Moreover, while the Court finds the subrogation provision in the SPD, when read as a whole, to be clear on its face, even if the Court were to find its language ambiguous, the rule of *contra proferentem* would require that ambiguities in the plan be construed against the Fund. *See Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir.) (Under the rule of *contra proferentem*, "ambiguities in insurance contracts must be construed against the insurer"), *cert. denied*, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990). The Court of Appeals for the Ninth Circuit has succinctly summarized the rationale behind this widely accepted rule of construction:

> Insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence.

*Id.* at 540. While the circuits are split on the applicability of this rule of construction to ERISA plans,[5] the Court finds the rea-

---

**5.** The Court of Appeals for the Eighth Circuit has expressly rejected *Kunin*'s application of the rule to ERISA plans, while the Third Circuit has questioned the *Kunin* approach. *See Taylor*

*v. Continental Group Change in Control of Severance Pay Plan*, 933 F.2d 1227, 1233 (3d Cir. 1991); *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153–54 & n. 2 (8th Cir.1990), *cert.*

soning of the Ninth and Second Circuits persuasive. In *Kunin*, the Ninth Circuit considered whether *Firestone Tire & Rubber Co. v. Bruch* abolished the *contra proferentem* rule for all ERISA plans, and concluded that it did not. *Id.* That court went on to distinguish the application of a presumption in favor of a party from deference to a particular party's interpretation, noting that the *Bruch* Court "said nothing whatsoever about the ordinary principles of construction according to which courts and administrators alike should arrive at their interpretations." *Id.* at 541. Accordingly, deference to an administrator's interpretation does not trump the longstanding rule of construction that ambiguities are resolved in favor of the insured. *Id.* The Court of Appeals for the Second Circuit arrived at the same conclusion by a somewhat different route when it found that the application of this rule of construction to ERISA plans "is an appropriate implementation of the congressional expectation that the courts will develop a 'federal common law of rights and obligations under ERISA–regulated plans.'" *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 107 (2nd Cir.1991) (quoting *Bruch*, 489 U.S. at 110–11, 109 S.Ct. at 954).

### B. Whether the Trustees' Interpretation is Consistent with the Purposes of the Plan

The purpose of the plan, obviously, is to provide health benefits to all present eligible claimants while preserving the pool of Fund assets for future plan participants and beneficiaries. "The arbitrary and capricious standard allows plan fiduciaries the discretion to balance competing interests of present and future claimants while maximizing assets to the aggregate advantage of all beneficiaries." *Oglethorpe Power*, 712 F.Supp. at 228 (citing *Fink v. National Savings and Trust Co.*, 772 F.2d 951, 955–56 (D.C.Cir.1985)). The trustees suggest that these purposes are served by subrogation: "The Trustees believe subrogation will result in savings to the Plan for

the benefit of all participants because the cost of treatment for such conditions will be paid by the person who is responsible for or contributed to the condition for which benefits are paid by the Plan, or his insurer." Def.'s Mot. for Summ.J., at 12. As a general matter, this argument is always true. By analogy, "[e]very time the Trustees make a decision to deny benefit applications, they are preserving the Fund's financial resources. Were the Court to defer to this argument, Trustee denials of benefits could never be deemed to be arbitrary and capricious." *Carlough*, 576 F.Supp. at 250–51. In Mr. Germany's case, the force of the Fund's argument is weakened considerably because the trustees have indicated that they may waive their subrogation claim to Mr. Germany's anticipated $50,000 recovery, but only *after* he signs the subrogation agreement.

### C. Whether the Trustees' Interpretation is Consistent with the Purposes of the Particular Provision Itself

It is this factor that gives the Court the greatest difficulty in determining that the trustees' interpretation is reasonable. What is at issue here is not merely the construction of the terms of a plan in the same sense as commonly appear in cases brought under 29 U.S.C. § 1132(a)(1)(B) of ERISA. *See, e.g., Block*, at 1451 (interpretation of the terms "totally disabled" in the plan); *Fuller v. CBT Corp.*, 905 F.2d 1055, 1057 (7th Cir.1990) (interpretation of the terms "certified as necessary"). There is no dispute that Mr. Germany is a "participant" in the Fund's plan. *See Bruch*, 489 U.S. at 108, 109 S.Ct. at 952. He clearly is. And there is no dispute that he is "eligible" to receive benefits under this plan for the injuries he sustained in the accident. *See Petrilli v. Drechsel*, 910 F.2d 1441 (7th Cir.1990). The Fund has stated that it will begin processing his claims for medical expenses as soon as he signs the subrogation agreement. *See* Pl.'s Ex. 11. Rather, what is at issue is the trustees' interpreta-

---

*denied,* ── U.S. ──, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991). The Court of Appeals for

the District of Columbia Circuit has yet to pass on the issue.

tion of a legal right, long recognized at common law, to which the Fund lays claim. While trustee interpretation of a subrogation clause is subject to review according to the same standards as set forth in *Bruch,* see *Baxter ex rel. Baxter v. Lynn,* 886 F.2d 182, 187 (8th Cir.1989), the Court must not ignore the purpose for such an equitable doctrine in deciding whether the trustees are arbitrary and capricious. *See Foltz,* 663 F.Supp. at 1514.

The penultimate paragraph of the subrogation provision in the SPD clearly indicates that its purpose is to avoid a double recovery, which is wholly consistent with the prevention of unjust enrichment that is the rationale for the equitable doctrine of subrogation. *See American Sec. Bank v. Bethlehem Nat'l Bank,* 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941); *Bachmann v. Glazer & Glazer, Inc.,* 316 Md. 405, 412–13, 559 A.2d 365, 368–69 (1989). That purpose is not served here. Mr. Germany's anticipated $50,000 recovery will not result in a double payment because his loss to date far exceeds what he can expect to receive in benefits under the plan *and* in a third-party recovery.

The subrogation agreement, in contrast, disregards this purpose in laying claim to *any* third-party recovery to the full extent of benefits paid. To say that this document merely restates in legal language the same rights as are set forth in the SPD provision is to ignore the express purpose of the subrogation rights claimed in the latter: to bar a double payment.

D. *Whether the Trustees' Interpretation is Consistent with Prior Interpretations and Whether Mr. Germany had Notice of that Interpretation*

While it appears that the Fund has required claimants who might recover from third parties to execute the subrogation agreement, it is not clear that the trustees have ever considered the language of that agreement in the context of a grossly undercompensated tort victim. *See* Ornold Dep. at 12–13, Def.s' Ex. 6. It is noteworthy that, one year after Mr. Germany's accident, the trustees modified the plan to exclude from coverage

> injuries sustained under circumstances which create a legal liability with some other person or party, provided that the plan will advance payment of benefits otherwise payable as long as the participant and/or dependent execute an agreement to pay the plan from any recovery from such other persons or party.

Pl.'s Ex. C. The parties agree that, had this provision appeared in the SPD prior to Mr. Germany's accident, there would be no lawsuit. In the absence of such a provision, it is hard to see how Mr. Germany, or some other similarly situated claimant, would have notice that the Fund would claim subrogation rights to a third-party recovery even though there was no danger of double payment.

ERISA's disclosure and reporting requirements mandate that the administrator of an employee benefit plan supply each participant covered under the plan with a summary plan description, along with all modifications and changes, which must also be filed with the Secretary of Labor. 29 U.S.C. §§ 1021(a), 1021(b). According to the statute, the summary plan description is required to contain certain information listed in § 1022(b), "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently *accurate and comprehensive* to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Courts have frequently held that, when there is a discrepancy between a "plan summary" as defined in § 1022, and other documents which purport to define the rights and obligations of plan participant but which were neither filed with the Secretary nor disclosed to participants in accordance with § 1021, the summary plan description controls. *See Heidgerd v. Olin Corp.,* 906 F.2d 903, 906–9 (2nd Cir.1990); *Edwards v. State Farm Mutual Automobile Ins. Co.,* 851 F.2d 134, 135–37 (6th Cir.1988); *McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985).

In this case, the Fund has stated that the SPD disclosed to Mr. Germany "is both 'the plan description' which is filed with the Secretary of Labor as well as the written plan document." Pl.'s Ex. B. The Court believes, however, that the general principal established in such cases as *Heidgerd* and *McKnight* remains: if the Fund seeks, by a document neither disclosed nor reported pursuant to § 1021, to change the rights and obligations of plan participants from those set forth in the SPD, then the Court must find the SPD controlling. Otherwise, ERISA's command, that the summary plan be "sufficiently accurate and comprehensive," would be violated. 29 U.S.C. § 1022(a)(1). Because the subrogation agreement the Fund seeks to enforce was neither filed with Secretary of Labor nor disclosed to plan participants, the Fund cannot enforce its terms to the extent they are inconsistent with the SPD.[6]

Thus, the Court finds that subrogation rights claimed in the separate agreement clearly and impermissibly broaden the Fund's entitlement to Mr. Germany's third-party recovery. The Court further finds the trustees' interpretation to the contrary to be arbitrary and capricious. *See Block,* slip op. at 1454. Given this discrepancy, the Court finds that the exposition of the Fund's subrogation rights set forth in the SPD, as construed in this Memorandum and Opinion, accurately expresses the Fund's entitlement to any third-party recovery, while the version contained in the subrogation agreement does not. *See Heidgerd,* 906 F.2d at 908–09. The Court will, accordingly, grant Mr. Germany's Motion for Summary Judgment, and deny the Fund's Motion, and issue an Order 1) declaring that Mr. Germany is entitled to his anticipated $50,000 recovery free of any subrogation claims from the Fund; 2) requiring the Fund to make an accounting to Mr. Germany of all of the benefits to which he is entitled as a result of his injury; and 3) enjoining the Fund from seeking to enforce any right of subrogation against Mr. Germany inconsistent with the subrogation

provision contained in the Summary Plan Description as interpreted herein.

---

**6.** In saying this, however, the Court does not imply that the Fund could enforce *no* separate subrogation agreement, only that it cannot enforce *this* one against Mr. Germany if doing so broadens the Fund's subrogation rights to Mr. Germany's anticipated third-party recovery.