**Felix T. PETRILLI, Plaintiff–Appellant,**

v.

**David B. DRECHSEL, individually and as Plan Administrator of Inland Steel Company Pension Plan, and Julius M. Scheffers, as Plan Administrator of the Inland Steel Company Severance Plan, Defendants–Appellees.**

No. 95–3669.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1996.

Decided Aug. 26, 1996.

326

David J. Tecson, Daniel J. Fumagalli (argued), Fumagalli, Tecson & Brent, Chicago, IL, for Plaintiff–Appellant.

Lawrence L. Summers (argued), Michael I. Richardson, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendants–Appellees.

Before BAUER, ESCHBACH, and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Felix Petrilli seeks damages under 29 U.S.C. § 1132(a)(1)(B) for his employer's decision to deny him severance and pension benefits. This is the second time his claim has been before us. After the district court granted summary judgment in favor of the Plan Administrators, we remanded the case for reconsideration of Petrilli's denial of benefit claims under a *de novo* standard of review. *Petrilli v. Drechsel,* 910 F.2d 1441 (7th Cir.1990). On remand, the parties consented to trial before a magistrate judge who, after a lengthy delay, entered judgment in favor of the administrators on August 1, 1995. Petrilli appeals that judgment, arguing that the delay, coupled with legal errors, warrant a new trial. We affirm.

## Background

Many of the facts surrounding Petrilli's employment with Inland Steel Company are set forth in our first opinion, *Petrilli,* 910 F.2d at 1442–45, but we will reiterate some of them here as relevant to this appeal. After a twenty-six year tenure, Petrilli left the company in 1986 during a major corporate reorganization.[1] Whether Petrilli resigned or was terminated is the focus of this lawsuit. But it took several years for any court to address this issue.

Shortly after leaving the company, Petrilli requested pension and severance benefits from Inland. The Plan Administrators denied the request, and Petrilli filed suit for wrongful denial of benefits and breach of fiduciary duty under sections 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§ 1132(a)(1)(B) and (a)(3), and for breach of contract under Illinois law.

The district court dismissed the state law claim, and entered summary judgment for the defendants on the ERISA claims. We affirmed the entry of judgment on the fiduciary duty claim, but reversed on the wrongful denial of benefits claim because the district court inappropriately had deferred to the Plan Administrators rather than conduct a *de novo* review. *Petrilli,* 910 F.2d at 1448–49. On remand, the parties consented to trial before a magistrate judge, a decision which Petrilli probably now regrets.

At trial, Petrilli presented evidence concerning the timing of his departure from Inland. The evidence centered on a meeting that Petrilli had with O. Robert Nottlemann, Inland's Vice Chairman and Petrilli's supervisor. Nottlemann also supervised the two Plan Administrators, David Drechsel and Julius Scheffers. The meeting occurred on February 14, 1986, at which time Petrilli informed Nottlemann that he had received a job offer that he intended to accept. At that point, Inland had made no decisions about the fate of Petrilli's department or whether to reassign Petrilli to another department within the company. Petrilli interpreted Nottlemann's comments to mean that termination from Inland was imminent.

Because he felt his position was about to be eliminated, Petrilli also brought up the issue of severance benefits at the February 14 meeting. Nottlemann reassured Petrilli about his future with Inland, and indicated that even if the company cut his current position, it would reassign him to another position. Nottlemann also questioned why Petrilli would receive severance benefits when he was leaving the company voluntarily, but at Petrilli's insistence, Nottlemann agreed to look into the matter. Later that day, Petrilli accepted the other position. His resignation became effective February 28, and he began his new job the following month.

---

1. Petrilli, then the Director of Corporate Health Services, was preparing a restructuring plan for

his department when he accepted a position with another company.

Correspondence among Petrilli, Nottlem-ann, Scheffers, and Inland Chairman Frank W. Luerssen confirm the February 14 meeting and Petrilli's interest in receiving severance benefits. On February 25, Scheffers informed Petrilli by letter that his decision to leave Inland was voluntary and that he therefore would not be eligible for severance benefits. At the time Petrilli left Inland, his position remained vacant. Over a year later, after Inland ultimately eliminated the position as a part of the reorganization, Petrilli submitted a formal application for enhanced pension and severance benefits.

According to its severance plan, Inland provided benefits to salaried employees "who are terminated as a result of a permanent shutdown of a plant or part of a plant, or a permanent reduction in workforce (job elimination)." In addition, Inland's pension plan included a "Rule of 65 Retirement" provision, which awarded early retirement benefits to employees who had at least twenty years of continuous service, were under 55 years old, had a combined age and years of continuous service of between 65 and 80, and

(a) whose continuous service is broken by reason of a layoff or disability, or

(b) whose continuous service is not broken and who is absent from work by reason of a layoff resulting from his election to be placed on layoff status pursuant to the Company's policy, if any, applicable to the group in which the participant is employed in the event of a permanent shutdown, or

(c) whose continuous service is not broken and who is absent from work by reason of a physical disability or a layoff other than a layoff resulting from an election referred to above and whose return to active employment is declared unlikely by the Company,

and who has not been offered suitable long-term employment.

Inland Steel Industries' Pension Plan Supplements for Salaried Employees, § 2.8. In sum, voluntary resignation would have rendered Petrilli ineligible for the Rule of 65 benefits. If Petrilli's position had been eliminated by the time he left the company, however, he would have been entitled to receive both severance and early retirement benefits.

The trial took place from June 16 to June 19, 1992, but no ruling followed. Plaintiff's counsel first brought the delay to the court's attention on June 3, 1993, by filing a motion for supplemental briefing. Ten months later, Petrilli filed a "motion for ruling" before the magistrate judge. A year after that, on June 30, 1995, Petrilli again filed a motion for ruling, or in the alternative a motion for new trial before the assigning district court judge. The district court judge entered an order requiring the magistrate judge to rule within four weeks, and on July 20, 1995, the magistrate judge issued a minute order ruling in favor of the Administrators. A written opinion followed two weeks later.

On appeal, Petrilli argues that the 37 month delay between the trial and the magistrate's entry of judgment entitles him to a new trial. He also claims that several legal errors irreparably infected the magistrate judge's decision in favor of Inland by: 1) failing to follow this court's instructions to apply a *de novo* standard of review; 2) disregarding the advocate-witness rule and allowing the testimony of Inland's in-house counsel; 3) relying on a letter from Inland's Chairman regarding an internal investigation; and 4) finding that Petrilli failed to produce evidence of how the plans treated other employees.

## Analysis

### A. 37 Month Delay

We note at the outset that the more than three year delay between the trial and the issuance of the magistrate judge's minute order is regrettable. However, we do not agree with Petrilli's suggestion that this delay inherently prejudiced the magistrate judge's findings. In *Hirsch v. Burke,* we addressed a twenty-three month delay and declined to adopt a "lazy judge" rule under which a reviewing court can transfer a case to a different trial judge if the trial court does not rule by a specific date. 40 F.3d 900, 905 (7th Cir.1994). See also *Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1068 n. 2 (1st Cir.1995) (seven year delay); *Keller v. United States,* 38 F.3d 16, 20–21 (1st Cir.1994) (eight year delay); *Phonetele,*

*Inc. v. American Telephone & Telegraph Co.,* 889 F.2d 224, 231–32 (9th Cir.1989), cert. denied, 503 U.S. 914, 112 S.Ct. 1283, 117 L.Ed.2d 508 (1992) (delay of nearly four years).

■ Petrilli attempts to distinguish *Hirsch* and the other cases we have cited, on the ground that they involved passive litigants who did nothing to expedite the decisionmaking process. Petrilli, by contrast, filed a motion for supplemental briefing one year after the trial, a motion for ruling fourteen months later, and another motion for ruling eleven months after that. We are sympathetic to the difficult tactical decision that Petrilli faced in trying to bring the matter to the magistrate judge's attention without alienating the fact-finder in his case, but passivity was not the decisive factor in any of the aforementioned cases. A rule requiring us to reverse a district court's decision in this situation "hardly seems a sensible means to reduce delay." *Phonetele,* 889 F.2d at 232. In *Hirsch,* we noted that the appropriate response to such a delay is to petition for a writ of mandamus ordering the district court to expedite its decision. 40 F.3d at 905; Fed. R.App. P. 21. Petrilli has not presented any affirmative evidence of prejudice beyond the fact of delay. Absent such evidence, we will not order a new trial. See *Ciccarello v. Graham,* 296 F.2d 858, 860 (5th Cir.1961).

*B. Review of Plan Administrators*

■ Petrilli also argues that several other legal errors warrant a new trial. The first concerns the standard of review governing Inland's decision to deny him benefits. It is well established that following a bench trial, we review the district court's conclusions of law *de novo,* but will reverse its findings of fact only if they are clearly erroneous. Petrilli's objection, however, is to the standard governing the magistrate judge's review of Inland's benefits decision.

■ Although ERISA does not specify a standard of review for district courts to use in evaluating benefit denials by plan administrators, the Supreme Court has held that a district court should review the administrator's decision under an "arbitrary and capricious" standard only when a benefit plan confers discretion upon the Plan Administrator. *Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 505 (7th Cir.1995). If the plan does not confer discretion upon the administrator, the court should review the denial of benefits *de novo.* See *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 111–14, 109 S.Ct. 948, 954–56, 103 L.Ed.2d 80 (1989); *Ramsey v. Hercules Inc.,* 77 F.3d 199, 202–03 (7th Cir. 1996).

Inland concedes that its severance plan contains no grant of discretion. In our prior decision, we held that the Inland pension plan similarly contained no language sufficient to exempt the administrator's decision from *de novo* review. See *Petrilli,* 910 F.2d at 1447. We instructed the district court on remand "to evaluate for itself, without deferring to the determinations of the Plan Administrators, whether Petrilli's departure constituted a 'termination' or 'layoff' within the meaning of the Inland severance and pension plans." *Id.* at 1448. Notwithstanding these explicit instructions, the magistrate judge entered conclusions of law that "the Inland Steel Company Pension Plan grants the Plan Administrator discretionary authority to construe and interpret the Plan and decide questions of eligibility," and that "Drechsel did not abuse his discretion in deciding that Petrilli's continuous service with Inland was not broken by reason of a layoff within the meaning of Section 2.8 of the [Pension Plan]." To the extent that the magistrate judge reached these conclusions using an abuse of discretion standard, we disregard them.

However, the magistrate judge further held that "even if we were to conclude that the [Pension Plan] does not grant the Plan Administrator discretionary authority, we would still conclude upon *de novo* review that Petrilli's continuous service was not broken by reason of a layoff," and that "therefore Petrilli was not entitled to a [pension] benefit." The magistrate judge reached a similar finding with respect to benefits under the severance plan. Petrilli complains that this roundabout way of reaching conclusions indicates that the magistrate judge did not review the matter *de novo.* While we offer no independent explanation for the circuitous

wording of the court's conclusions, the mere fact that the magistrate judge entered findings in the alternative does not demonstrate that he applied the wrong standard of review. Petrilli presented the respective benefits plans to the magistrate judge, along with the rest of his testimonial and documentary evidence, and the record shows that he received a full and fair review of his claims in the district court. Based on the magistrate judge's findings of fact, we would have reached the same legal conclusion.

*C. Advocate–Witness Rule*

 Petrilli next argues that the district court erred in failing to apply the advocate-witness rule to preclude testimony from William T. McCormick, Jr., Inland's Government Affairs Counsel. The advocate-witness rule bars counsel from acting as both an advocate and a witness in a single proceeding except under special circumstances. Where an attorney improperly appears as both, the sanction of reversal and a new trial *may* be warranted. *United States v. Marshall,* 75 F.3d 1097, 1106 (7th Cir.1996) (emphasis in original). See also *United States v. Watson,* 87 F.3d 927, 932 (7th Cir.1996); *United States v. Johnston,* 690 F.2d 638, 642–43 (7th Cir.1982) (en banc). Whether to grant a mistrial falls within the trial court's discretion. *Marshall,* 75 F.3d at 1106.

The problem in applying the advocate-witness rule in this case is that McCormick's role was solely that of a witness. McCormick testified as a fact witness about meetings that Petrilli attended and statements that Petrilli made regarding his new employment opportunity and his separation from Inland. Although McCormick was involved throughout the Petrilli litigation—as one would expect an in-house counsel to be—he did not act as an advocate for Drechsel or Scheffers. The mere fact that he is an attorney does not disqualify him as a witness.

*D. Other Issues*

 Lastly, Petrilli attacks several of the magistrate judge's credibility findings, in-

cluding his reliance on a letter from Inland's Chairman concerning an investigation of Petrilli's benefits application that Petrilli claims never took place, and his finding that Petrilli failed to produce evidence about similarly situated employees who received severance benefits. Both of these assertions amount to nothing more than a request for us to reexamine the credibility of the witnesses and reweigh the evidence that the parties presented to the magistrate judge. This we will not do. *Sullivan v. Gilchrist,* 87 F.3d 867, 872 (7th Cir.1996). The district court heard the arguments of counsel, observed the demeanor of the witnesses, and weighed and considered all of the evidence presented.

### Conclusion

For the foregoing reasons, the district court's entry of judgment for Inland Steel Company is

Affirmed.[2]

---

**2.** Appellees also have filed a motion for sanctions under Federal Rule of Appellate Procedure 38.  This motion is denied.