Jane G. FITTS, Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

and

**Unum Life Insurance Company of America, Defendants.**

**No. Civ.A. 98–617(RMU).**

United States District Court, District of Columbia.

Aug. 31, 1999.

John J. Witmeyer, Richard B. Marrin, Christopher Carney, Ford Marrin Esposito Witmeyer & Gleser, L.L.P., New York City, John Michael Fedders, Washington, D.C., for the plaintiff, Ms. Jane Fitts.

M. Carolyn Cox, Heather A. Wydra, Wilmer, Cutler & Pickering, Washington, D.C., for defendant, Federal National Mortgage Association (FNMA).

Frank Charles Morris, Jr., Teresa L. Jakubowski, Epstein, Becker & Green, P.C., Washington, D.C., for defendant, Unum Life Insurance Company of America.

### MEMORANDUM OPINION

URBINA, District Judge.

**Granting Summary Judgment to the Defendants on Count 3 [Nos. 48, 53, 55–1]; Declining Supplemental Jurisdiction over Count 6; Dismissing without Prejudice Motions for Summary Judgment on Count 6 [Nos. 55–2, 60]**

## I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment on the plaintiff's two remaining claims: count 3, which asserts a claim against both defendants under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461; and count 6, which asserts a claim for misrepresentation under District of Columbia law against defendant Federal National Mortgage Association ("Fannie Mae") alone. In the course of the plaintiff Jane Fitts's motion for summary judgment on count 3, Ms. Fitts effectively asks the court to reconsider certain rulings from its

March 29, 1999 Memorandum Opinion. For the reasons which follow, the court adheres to its prior rulings, and it will grant the defendants summary judgment on count 3.[1] In addition, the court will decline to exercise supplemental jurisdiction over count 6. Therefore, the court will dismiss the cross-motions for summary judgment on count 6 without prejudice to the plaintiff's right to file in D.C. Superior Court.

## II. BACKGROUND

The plaintiff worked as an attorney for Fannie Mae, a federal corporation, until 1995, when her bi-polar disorder caused her to become disabled. *See* Compl. ¶¶ 4, 17. Under Fannie Mae's long-term disability plan, physically disabled persons receive benefits until age 65, whereas mentally disabled persons receive benefits for up to 24 months. *See* Compl. ¶¶ 15, 20.

When the plaintiff became disabled she applied for and received short-term benefits. *See* Compl. ¶ 18. Upon the termination of short-term benefits she applied for and received long-term benefits. *See id.* ¶ 19. Shortly thereafter, Unum notified the plaintiff that her benefits would end after 24 months, because bi-polar disorder is a mental disorder subject to the 24-month limitation on benefits for such disorders. *See id.* ¶ 20. The plaintiff protested the termination of benefits to both defendants, but they declined to re-classify her disorder as a "physical" disability. *See id.* ¶¶ 21, 22. Ms. Fitts's benefits terminated after 24 months. Subsequently, she filed the instant action. *See id.* ¶ 1.

By Memorandum Opinion and Order issued March 29, 1999, this court granted the defendants' motions to dismiss Counts 1, 2, 4 and 5 with prejudice: Counts 1 and 2 asserted claims under the Americans with Disabilities Act; Count 4 asserted a claim under the D.C. Human Rights Act; and Count 5 claimed breach of contractual and common-law duties. The court also

denied the plaintiff's motion for partial summary judgment on count 3, her ERISA claim. Lastly, as to count 3 the court struck the plaintiff's request for a jury trial and damages.

By order dated May 7, 1999 this court stayed all discovery pending resolution of the cross-motions for summary judgment on count 3.

## III. DISCUSSION

### A. Legal Standard: Motion for Summary Judgment

The district court may enter summary judgment where the moving party demonstrates that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Once the moving party has presented a properly supported motion, the nonmoving party must go beyond the pleadings to identify evidence that would allow a reasonable jury to find in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Drawing from affidavits, depositions and answers to interrogatories, the nonmovant must identify specific facts indicating that a genuine issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, at the summary-judgment stage it is not the court's function to weigh the evidence; rather, the court must determine whether sufficient evidence exists for a reasonable fact finder to return a verdict in the nonmovant's favor and warrant a trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

### B. Analysis

#### 1. Count Three—ERISA

In Count 3, Ms. Fitts alleges that Unum and Fannie Mae improperly classified her disability as "mental" rather than "physi-

---

1. The court will also deny as moot the parties' motion to reschedule the interim status hearing set for August 16, 1999. The court held that hearing as scheduled.

cal." *See* Compl. ¶¶ 1, 20. This classification terminated Ms. Fitts's long-term disability benefits after twenty-four months, rather than at age 65. *See id.*

### a. The Standard of Review for ERISA Determinations: "Arbitrary and Capricious" or *De Novo?*

In the March 29, 1999 Memorandum Opinion, this court held that the defendants' classification of Ms. Fitts's disability is properly reviewed under the deferential "arbitrary and capricious" standard of review. *See Fitts v. Federal Nat. Mortg. Ass'n,* 44 F.Supp.2d 317 (D.D.C.1999). Ms. Fitts urges the court to reconsider and adopt a *de novo* standard of review. *See* Pl.'s Mot. for Summ.J. on Count 3 at 1–6. For the reasons which follow, the court adheres to its prior ruling that the defendants' classification of Ms. Fitts's disability is properly reviewed under the "arbitrary and capricious" standard.

### i. *Reviewing and Elaborating on Prior Holding that Unum had Discretion under Plan and Policy*

■ The Supreme Court has held that when a plan participant challenges the denial of benefits under ERISA, the court must review the denial *de novo* unless the benefit plan gives the plan administrator or fiduciary some discretion to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

To determine whether an ERISA benefit plan confers discretion, the court first reviews the plan documents themselves. *See Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1453–54 (D.C.Cir.1992). "(I)t … need only appear on the face of the plan documents that the fiduciary has been given (the) power to construe disputed or doubtful terms—or to resolve disputes over benefits eligibility—in which case the trustee's interpretation will not be disturbed if reasonable." *Pitney Bowes,* 952 F.2d at 1453–54 (citation omitted). In de-

termining whether the decisionmaker had discretion, this court considers "the provisions of the [plan] as interpreted in light of all the circumstances and such other evidence of the intention of the [plan's creator] with respect to the [plan] as is not inadmissible." *Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1256 (3d Cir.1993) (quoting *Firestone,* 489 U.S. at 112, 109 S.Ct. 948).

In *Firestone* the defendant, Firestone Tire Company ("Firestone"), sold five of its plants. *See Firestone,* 489 U.S. at 105, 109 S.Ct. 948. The plaintiffs, Firestone employees, applied for severance benefits under Firestone's termination pay plan. *See id.* at 105, 109 S.Ct. 948. Firestone denied termination benefits on the ground that the sale of the plants did not constitute a "reduction in work force" within the meaning of the plan. *See id.* The Court ruled that Firestone did not exercise discretionary authority because the plan did not indicate that Firestone had the power to construe uncertain terms or that eligibility determinations were to be given deference. *See id.* at 111, 109 S.Ct. 948.

■ This court previously concluded that, unlike the plan in *Firestone,* the plan in the instant case grants discretionary authority to the party administering claims under the plan. The court began by noting that Section 7.01 provides that the Fannie Mae Benefit Plans Committee ("Committee") shall have general responsibility for the administration and interpretation of the Plan. *See* Esposito Dec. dated May 6, 1999, Ex. 1 ("General Rules and Regulations Governing the Federal National Mortgage Association Flexible Benefits Plan") ("the Plan"); *see* Plan § 2.01(*o*). One of those responsibilities is determining employees' eligibility for the Plan. *See* § 7.02, Plan at 15; *Block,* 952 F.2d at 1452 (administrator had discretion where plan gave it power "to determine all questions of eligibility and the rights and status of Participants"); *Eley v. Boeing Co.,* 945 F.2d 276, 278 n. 2 (9th Cir.1991) (administrator had discretion where plan

provided that "The Company shall determine the eligibility of a person for benefits under the plan"); *Curtis v. Noel,* 877 F.2d 159, 161 (1st Cir.1989) (discretion conferred by language letting administrators determine "which Employees are eligible to participate in the Plan").

Moreover, the Plan gives the Committee the right to review the disposition of claims for benefits. *See* Plan at 15; *cf. Westover v. Metropolitan Life Ins. Co.,* 771 F.Supp. 1172, 1174 (M.D.Fla.1991) (administrator had discretion where plan authorized it to "make the decision as to whether such service is medically necessary ... and [whether the employee] is qualified for benefits under this Plan").

In addition, this court continues to find it significant that section 7.01 of the Plan provides that "[a]ll decisions, interpretations, determinations and other actions of the Committee shall be final, binding, and conclusive and shall be afforded the maximum deference allowed by law." *See* Plan at 15; *see also Block,* 952 F.2d at 1452–53 (Plan Committee had discretion where plan provided that its decisions "shall, to the extent not inconsistent with the provisions of the Plan, be final and conclusive and binding upon all persons having an interest in the Plan"). Finding discretion in such plan language is consistent with the law of trusts, which the Supreme Court consulted in its seminal ERISA decision, *Firestone.* For example, a decision cited by *Firestone* found discretionary authority in a trust agreement providing that "any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding...." *See Central States, Southeast and Southwest Areas*

*Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 568, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), *quoted in Firestone,* 489 U.S. at 111, 109 S.Ct. 948; *accord Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1141 (7th Cir.1990) (discretion found in plan which stated, "any construction adopted by the [t]rustees in good faith is binding").

Because the Plan grants the administrator[2] power to determine eligibility and interpret the plan's terms, and because the plan states that eligibility determinations shall receive deference, this court found that the plan contains the very type of language granting discretionary authority that the Supreme Court found lacking in Firestone's plan. *Contrast Firestone,* 489 U.S. at 111, 109 S.Ct. 948 ("there is no evidence that under [the] ... plan the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference."). On these bases, the court concluded that Fannie Mae's plan granted discretionary authority to the entity administering claims under the plan, Unum. Accordingly, the court applied a deferential rather than *de novo* standard of review. *See id.*

ii. *Does Plan Section 7.10(d) Preclude Fannie Mae's Grant of Discretion to Unum?*

According to Ms. Fitts, the court's finding that Fannie Mae's ERISA plan grants the administrator discretion was based on defendant Unum's "mischaracterization" of the plan. *See* Pl.'s Mot. for Summ.J. on Count 3 at 1. Ms. Fitts con-

---

2. Although the plaintiff now states that Unum is not the "plan administrator" or "claims administrator" to whom discretion is delegated, the amended complaint itself repeatedly acknowledges that Unum in fact functioned as the administrator of the Plan. *See* Am.Compl. ¶ 1 ("Plaintiff ... brings this action ... [against] Unum ..., which administers Fannie Mae's Long Term Disability Plan"); *id.* ¶ 12 ("Upon information and belief, at all material times, Unum issued the LTD [long-

term disability] Policy *and administered Fannie Mae's LTD Plan.*"); *id.* ¶ 13 (referring to "Unum, as Administrator"); *id.* ¶ 36 ("Unum, as Fannie Mae's insurer and administrator,...."); *id.* ¶ 45 ("Fannie Mae, as employer, and Unum, the Plan Administrator,...."); *id.* ¶ 56 ("Fannie Mae, itself and acting through its Plan administrator Unum,...."); *id.* ¶ 63 ("Fannie Mae, through Unum, the administrator of its LTD Plan,....").

tends that the plan excerpts previously presented by Unum—sections 7.01 and 7.02—are "flatly contradicted by the language of the entire plan." *See id.* at 3. Specifically, Ms. Fitts points to Section 7.10(d), which provides.

> *Special Rule for Certain Plan. Notwithstanding any other provision of this Section 7, claims with respect to benefits* provided *under an insurance contract* or contract with a health maintenance organization or Preferred Provider Organization *shall be made and reviewed under the terms of such contract.*

Emphasis added, Ms. Fitts argues that section 7.10(d) is "clearly" intended "not to grant Unum discretion, but the opposite: to hold Unum strictly to the terms and benefits provided by Unum in its insurance contract." *See* Pl.'s Mot. for Summ.J. on Count 3 at 4. The court finds this argument unpersuasive. Section 7.10(d) may be intended to "hold Unum strictly to the terms" of its contract, but that hardly implies that Unum did not have discretion to determine whether Ms. Fitts had presented ·proof of what it considered a covered disability. Section 7.10(d) states first that whenever benefits are provided under an insurance contract, a claim for benefits must be *prepared and submitted* ("made") in accordance with requirements set forth in the contract. Likewise, Unum must then *review* the claim according to the terms of the contract.

The provisions immediately preceding subsection (d) further illustrate its purpose and function. Plan subsections 7.10(a), (b) and (c) specify, respectively, the procedures and timetable the administrator must follow when notifying a claimant that a claim has been denied; the required content of a denial notice; and the timetable and procedures governing appeals of denials. *See* Plan §§ 7.10(a–c). Subsection (d) should be read not in isolation, but *in pari materia* with subsections (a–c); *cf. Chandler v. D.C. Dep't. of Corrections,* 145 F.3d 1355, 1358 (D.C.Cir.1998) ("While the phrase 'appeal a judgment' [in 28 U.S.C.

1915(g) ] may appear ambiguous when examined in isolation, we must read those words in the context of the rest of section 1915 (all of which deals with [the same topic] )...."); *Lee v. Thornburgh,* 877 F.2d 1053, 1057 (D.C.Cir.1989) (reading *in pari materia* provisions which were part of "same statute and relate[d] to same subjects and purpose"). Upon doing so, the more logical conclusion is that subsection (d) was inserted so that denials of claims for benefits under a policy would be subject to the deadlines and procedural requirements set forth in the policy, not the requirements which would otherwise obtain under subsections (a–c).

In short, Section 7.10(d) does not itself confer or deny discretionary authority to the Fannie Mae–Unum plan administrator, nor does it suggest that Unum did not have discretion under the Plan or policy. Accordingly, section 7.10(d) provides no reason for the court to depart from its prior holding on discretion and standard of review.

> iii. *The plaintiff's interpretation of Plan section 7.10(d) is Consistent with the Court's Ruling that Unum has Discretion as the Administrator of Claims*

Ms. Fitts also argues that Unum lacked discretion on how to classify her disability because Fannie Mae did not expressly delegate discretion as required by the Plan. *See* Pl.'s Mot. for Summ.J. on Count 3 at 6. But the plaintiff's interpretation of Plan section 7.10(d) undermines any argument that Unum is not the claims administrator (the entity authorized to review and approve or deny the plaintiff's claim). In pertinent part, section 7.10(d) provides, "Notwithstanding any other provision of this Section 7 [of the Fannie Mae Plan], claims with respect to benefits provided under an insurance contract ... shall be made and reviewed under the terms of such contract."

By its terms, Section 7.10(d) is directed at the entity which "review[s]" "claims

with respect to benefits provided under an insurance contract." The plaintiff argues that section 7.10(d) is directed at Unum (specifically, "to hold Unum strictly to the terms and benefits provided by Unum in its insurance contract"). *See* Pl's Mot. for Summ.J. on Count 3 at 4. Thus, advertently or not, the plaintiff has argued that a provision which applies to the entity which reviews claims, applies to Unum. This makes sense, because in the words of section 7.10(d). Unum *was* the entity which had discretion to "review" the plaintiff's "claim for benefits provided under [the Fannie Mae–Unum] insurance contract." In short, the plaintiff's own argument on section 7.10(d) is consistent with the court's ruling that Unum was the one administering and reviewing claims under the Fannie Mae Plan and had the discretion granted by that Plan.

Finally, to reinforce this point the court notes that correspondence between the parties concerning the plaintiff's application for long-term disability benefits confirms their mutual recognition that Unum was the party with discretion to grant or deny the application. For example, in a letter to Fannie Mae, the plaintiff referred not to Fannie Mae making the decision but to Unum: *"[I]f Unum rejects my application,* we then need to discuss the nature of my continued employment. . . ." *See* Letter dated Oct. 27, 1995 (Affidavit of M. Carolyn Cox dated May 14, 1999, Ex. 1) (emphasis added). Similarly, Fannie Mae's correspondence to the plaintiff left no doubt that it was Unum which was administering claims under the Plan and had discretion to approve or deny them: "I hope . . . that we will be able to obtain *Unum's determination of your disability status* shortly." *See* Letter dated Nov. 17, 1995 (*Id.*, Ex. 2) (emphasis added).

iv. *Did Fannie Mae Delegate Discretion to Unum through its Plan's Incorporation of the Unum Policy?*

The March 29, 1999 Memorandum Opinion, as amplified by the foregoing, confirm

the court's understanding that Unum had discretion to review and approve or deny claims for benefits under its policy with Fannie Mae. The court finally notes that another provision of Fannie Mae's Plan could be seen to give Unum discretion to evaluate the proof submitted in support of a long-term disability claim: Plan Exhibit J, section 3.03. The court notes this alternative ground for its holding in further response to Ms. Fitts's argument that Unum lacked discretion on how to classify her disability because Fannie Mae did not expressly delegate discretion as required by the Plan. *See* Pl.'s Mot. for Summ.J. on Count 3 at 6.

Preliminarily, the plan gives the Committee the authority to delegate discretion to an outside company, such as Unum: "The Committee may delegate . . . its authority to perform any act hereunder, including, without limitation, those matters involving the exercise of discretion. The Committee also may delegate such authority to outside . . . companies. . . ." Section 7.02. Ms. Fitts contends, however, that the Committee never took the steps required by the Plan to delegate discretionary authority to Unum. Specifically, the Plan provides. *"Operation of Committee.* \*\*\* Any action of the Committee may be taken upon the affirmative vote of a majority of the members of the Committee at a meeting or without a meeting by instrument in writing signed by a majority of the members of the Committee." Section 7.04, Plan at 16. As discussed above, correspondence between the parties and the plaintiff's reading of Plan section 7.10(d) already confirm that the plaintiff recognizes that Unum had the discretion to review and approve or deny her claim.

In addition, the Plan itself explicitly incorporates the long-term disability policy. In turn, the policy gives Unum the discretion to determine whether proof submitted in support of a claim is satisfacto-

ry.[3] An addendum to the Plan provides, "[T]he terms and conditions of any insurance policy entered into by the Company with respect to the benefits under this Long–Term Disability Insurance Plan are hereby incorporated in their entirety by reference." Plan Ex. J. § 3.03. ("The Company" means Unum. *See* Policy Cover page.) The General Provisions portion of the policy provides. "Proof of claim must be given to the Company [Unum]." *See* Policy section 6F2a. The policy clarifies that the proof referred to is proof of a covered disability. "Proof of continued disability ... must be given to the Company within 30 days of the request for proof." *See* policy section 6F2c. Likewise, the Benefits portion of the policy begins, "When the Company receives proof that an insured is disabled due to sickness or injury ... the Company will pay the insured a monthly benefit...." *See* Policy section IV, "Disability."

The court finds that, apart from any other provision of the Plan, these incorporated policy provisions indicate that Unum has discretion to assess proof submitted to support a long-term disability claim. Preliminarily, the court notes that "magic words such as 'discretion' and 'deference' may not be absolutely necessary to avoid a [*de novo*] standard of review." *See Kinstler v. First Reliance Standard Life*, 181 F.3d 243, 251 (2d Cir.1999) (citations omitted) There is some division among the courts, however, as to what policy language is sufficient to confer discretion in the ERISA context.

*Language Held Insufficient to Confer Discretion.* On the one hand, the Ninth Circuit, sitting *en banc*, has held that a provision requiring "satisfactory written proof" is insufficient to confer discretion. *See Kearney*, 175 F.3d at 1084. Likewise, a panel of the Second Circuit held that a provision requiring claimants to "submit[ ] satisfactory proof of Total Disability to us" was insufficient to confer discretion. *See Kinstler*, 181 F.3d at 252. The Second Circuit panel reasoned that, "[U]nless a policy makes it explicit that the proof must be satisfactory to the decision-maker, the better reading of 'satisfactory proof' is that it establishes an objective standard, rather than a subjective one." *Id.* (citation omitted).

*Language Held Sufficient to Confer Discretion.* The Sixth and Seventh Circuit Courts of Appeals and district courts in the Third and Ninth Circuits, however, hold a contrary view. The Sixth Circuit has held that an ERISA insurance contract conferred discretion by requiring "satisfactory written proof" of "each of the ... elements of proof of loss." *See Osborne v. Cyprus Mountain Coals Corp.*, 166 F.3d 1215, 1998 WL 833769, *2 (6th Cir.1998) (table); *see also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380–81 (6th Cir.1996) (discretion found where claimant was required to submit "satisfactory proof of Total Disability to us"); *Miller v. Metropolitan Life Ins. Co.*,

---

**3.** The plaintiff also asserts that even if the policy gives Unum discretion as to proof of a covered disability, it does not give Unum discretion as to how to classify her disability. *See* Pl.s' Reply in Support of Summ.J. on Count 3 at 2. The court finds this distinction untenable. First, the right to determine whether a claimant's submissions constitute "proof" of a covered disability would not be meaningful if it did not encompass the right to determine whether the disability asserted is indeed covered. Moreover, as the Ninth Circuit Court of Appeals has stated. "[A] proper and efficient functioning of an ERISA plan does often depend on the use of discretion by the plan fiduciaries. As we have pointed out,

a plan does confer discretion when it 'includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator.'" *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996) (emphasis added) (citation omitted), *appeal after remand*, 182 F.3d 927, 1999 WL 369799 (9th Cir.1999). *Cf. Marchetti v. Sun Life Ass. Co.*, 30 F.Supp.2d 1001, 1007 (M.D.Tenn.1998)

("The test [for deferential review], however, is discretionary authority to determine eligibility for benefits or construe the terms of the plan, not both.")
(citing *Firestone*, 489 U.S. at 115, 109 S.Ct. 948).

925 F.2d 979, 983 (6th Cir.1991) (discretion found where disability determined "on the basis of medical evidence satisfactory to the Insurance Company"); *Marchetti v. Sun Life Ass. Co.*, 30 F.Supp.2d 1001, 1007 (M.D.Tenn.1998) (discretion found in language "[Aetna] shall have the right to require as part of the proof of claim satisfactory evidence...."). Similarly, the Seventh Circuit has deemed sufficient the phrase "proof ... satisfactory to us," as well as the less rigorous phrase, "such due proof, as shall be from time to time required...." *See Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 505 (7th Cir.1995); *see also Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir.1989) (discretion found where disability "determined on the basis of medical evidence satisfactory to the Committee"). Moreover, district courts in the Third Circuit have found discretion where a claimant was required to provide "written proof acceptable to [the claims administrator]" or "furnish certification satisfactory to the Company of disability." *See Nolen v. Paul Revere Life Ins. Co.*, 32 F.Supp.2d 211, 215 (E.D.Pa.1998); *Scarinci v. Ciccia*, 880 F.Supp. 359, 361 (E.D.Pa.1995). A district court in the Ninth Circuit has ruled similarly. *See Dames v. Paul Revere Life Ins. Co.*, 49 F.Supp.2d 1194, 1202 (D.Or.1999) (discretion found in requirement that proof of disability "must be acceptable to us"). *Cf. Brown v. National City Corp.*, 974 F.Supp. 1037, 1041 (W.D.Ky.1997) (discretion found in Plan provision referring to benefits " 'allow[e]d' (and, by implication, disallowed) by the Plan Administrator").

Although many of the decisions finding a grant of discretion involved provisions which explicitly required that the claimant's evidence be "satisfactory to the insurer," "to the company" or "to us," it does not follow that in the absence of such language discretion has not been granted to the carrier. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir.1998). First, the absence of "due" or "satisfactory" before "proof" in the provision authorizing Unum to require "proof of disability" does not indicate that Unum lacked discretion. The inclusion of such qualifiers is not necessary for a reasonable person to conclude that *satisfactory* proof is what is required. The inclusion of "satisfactory" would merely spell out what is necessarily implicit in the requirement of "proof." On the contrary view, Unum could be required to grant benefits whenever a claimant submitted materials purporting to be "proof" of a covered disability, regardless of the persuasiveness of those materials vis-a-vis evidence to the contrary. Such a result would be incongruous.

Second, the absence of the phrase "to us" or "to the insurer" in the provision requiring proof of a covered disability does not preclude finding that Unum had discretion. The plaintiff has not denied that the policy allows for Unum to request and receive proof of a covered disability before a claimant will be paid disability benefits. As the Sixth Circuit Court of Appeals held in this context.

> We agree with [the insurer] that this "right to require as part of the proof of claim satisfactory evidence" means, semantically, that the evidence must be satisfactory to [the insurer], the only named party with the right to request such evidence. *It naturally follows that [the insurer], the receiver of the evidence, would review that evidence to determine if its constitutes satisfactory proof of [a covered] disability.* It is simply implausible to think that [the insurer] would merely hold the evidence as a safekeeper or depository for a third party unnamed in the contract to review in making benefits determinations. *** We therefore conclude that the plan clearly grants discretion to [the insurer] because, under the only reasonable interpretation of the language, [the insurer] retains the authority to determine whether the submitted proof of disability is satisfactory.

*See Perez*, 150 F.3d at 556–57. In other words, when no one other than Unum is

mentioned in the relevant policy provision, who else *but* Unum would have to be satisfied with a claimant's proof of a covered disability? "It would not be rational to think that the proof would be required to be satisfactory to anyone other than [the insurer]." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996); *accord Sciarra v. Reliance Standard Life Ins. Co.*, 1998 WL 564481, *7 (E.D.Pa.1998). *But see Kinstler v. First Reliance*, 1997 WL 401813, *8 n. 4 (S.D.N.Y.1997).

Indeed, it is difficult to see how Unum could decide whether or not to grant a claim for disability benefits without assessing the adequacy of the required proof that the claimant suffers from a covered disability. That assessment clearly partakes of discretion. *See Perez*, 150 F.3d at 558 ("A determination that evidence is satisfactory [to constitute proof of a covered disability] is a subjective judgment that requires a [decisionmaker] to exercise his discretion."). Upon consideration of *Perez* and the other decisions discussed above, the court concludes that the policy's granting Unum the authority to require proof of covered disability further supports the court's ruling that Unum had discretion to decide whether the plaintiff had a covered disability. *See Bollenbacher v. Helena Chem. Co.*, 926 F.Supp. 781, 786 (N.D.Ind. 1996) (discretion found in phrase "benefits will be paid '[w]hen the Company receives proof that the individual is disabled....'"); *cf. Estate of Brinks v. Blue Cross and Blue Shield of Michigan*, 1998 WL 278177, *3–*4 (W.D.Mich.1998) ("[D]eference is appropriate where plan

language grants the administrator discretion 'to make reasonable requests for documentation and to determine what evidence may be required to provide a basis for' an eligibility determination") (citation omitted).[4]

### b. Reviewing the Classification of the Plaintiff's Disability under the "Arbitrary and Capricious" Standard

Given the court's reaffirmance that the classification of the plaintiff's disability is properly reviewed under a deferential standard of review, the court next reconsiders whether that classification was "arbitrary and capricious."[5] *See Pitney Bowes*, 952 F.2d at 1452. "The key to the arbitrary and capricious standard is that if there is more than one action that is considered 'reasonable,' the Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Id.* (internal quotations omitted). The decision to classify Ms. Fitts's bipolar disorder as "mental" will be found to be reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997). For the reasons which follow, the court will adhere to its conclusion that the classification of Ms. Fitts's bipolar disorder was reasonable.

The *Firestone* court also held that if the benefit plan gives discretion to an administrator or fiduciary who operates

4. District courts have split on this issue in the Tenth Circuit. One judge held insufficient the clause, "We will pay you a monthly benefit ... when we receive proof that you ... are disabled...." *See Lund v. Unum Life Ins. of America*, 19 F.Supp.2d 1254, 1258 (D.Utah 1998). Another judge, however, found sufficient the clause, "The Insurance Company will begin paying ... when it receives due proof that: (1) the Employee becomes Totally Disabled...." *See Caldwell v. Life Ins. Co. of No. Am.*, 959 F.Supp. 1361, 1365 (D.Kan. 1997).

5. Accordingly, this court does not hold that it would be unreasonable to classify the plaintiff's disability as "physical." Under the arbitrary and capricious standard, however, "[t]he Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Sampson v. Citibank*, 53 F.Supp.2d 13, 15–16 (D.D.C.1999) (dismissing ERISA claims).

under a conflict of interest, the court must weigh that conflict as a factor in determining whether an abuse of discretion occurred. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948 (citing Restatement (Second) of Trusts § 187, cmt. d (1959)). In the instant case the court has determined that Fannie Mae and Unum may have operated under a potential conflict of interest. Specifically, classifying Ms. Fitts's disability so as to deny her long-term benefits saved Unum from having to pay those benefits. *See Marchetti v. Sun Life Ass. Co.,* 30 F.Supp.2d 1001, 1007 (M.D.Tenn.1998) (insurance carrier had "natural reluctance to grant requests for benefits because those benefits would be paid out of its own assets"). Indirectly, such decisions may contribute to lower long-term disability insurance premiums for Fannie Mae in the future. Accordingly, the court shall weigh this as a factor in evaluating the classification of the plaintiff's disability.[6]

### i. *Applicability of Rule of Contract Construction, "Contra Proferentem," to Term "Mental Illness"*

In the March 29, 1999 Memorandum Opinion this court already held that the defendants had presented sufficient evidence to conclude that it was not unreasonable for Unum to classify bipolar disorder as a "mental" disability. The court finds no reason to revisit or question that determination. Yet the court considers a new argument by the plaintiff, that because the term "mental illness" in the policy is ambiguous,[7] the court must accept the plaintiff's interpretation of the term under the rule of construction known as *"contra proferentem." See* Pl.'s Mot. for Summ.J. on Count 3 at 7. That rule provides that any ambiguity in a contract should be construed against the party which drafted the contract. This argument runs counter to the weight of the decisions and will be rejected.

In the instant matter this court has determined that Unum had discretion under its policy with Fannie Mae and thus is entitled to have its decision reviewed under the deferential arbitrary and capricious standard. The plaintiff counters that *contra proferentem* nonetheless requires the court to adopt the plaintiff's view that bipolar disorder is a physical disability, without regard to Unum's view that it is a mental disability. The Court of Appeals for the D.C. Circuit has not yet addressed whether the *contra proferentem* rule applies in this situation. Courts in several other Circuits, however, have held that *contra proferentem* does not apply when the claim decisionmaker has been given discretion. In other words, these courts hold that the rule of *contra proferentem* applies in the ERISA context only when the administrator's decision is being reviewed under the *de novo* standard. This emerging consensus is shared by at least five Circuit courts. *See Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 586 (1st Cir.1993);[8] *I.V. Services v. Trust-*

6. The potential conflict of interest, however, does not call for abrogation of the arbitrary and capricious standard where, as here, the challenged decision would have been reasonable if made by a decisionmaker with no potential conflict of interest. *See Ashley v. Morton Internat'l.,* 38 F.Supp.2d 836, 840 (C.D.Cal.1999) (although it was clear that plan administrator was managerial-level employee of defendant employer, plaintiff had not provided proof that claim denial was affected by any conflict of interest, and so court applied arbitrary and capricious standard of review).

7. The fact that the Plan and policy do not define "mental illness" unambiguously does not mean that the court should not defer to the defendants' reasonable interpretation of that term. "To limit an administrator's discretion to only those terms explicitly defined would undermine the administrator's discretionary power or require companies to write interminably long plans to account for every term." *Administrative Committee v. Robinson,* 164 F.3d 981, 986 (6th Cir.1999).

8. The First Circuit goes further, holding that *contra proferentem* generally does not apply in the ERISA context at all. *See Mauser v. Raytheon Co. Pension Plan,* 46 F.Supp.2d 98, 100 (D.Mass.1999) (quoting *Rodriguez–Abreu,* 986 F.2d at 586) ("[I]n the ERISA context, we generally do not construe ambiguous terms

*ees*, 136 F.3d 114, 122 n. 8 (2d Cir.1998); *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1011 (7th Cir.1998); *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1196 (9th Cir.1996); *Kimble v. Metropolitan Life*, 969 F.Supp. 599, 602 (E.D.Cal. 1997); *Cagle v. Bruner*, 112 F.3d 1510, 1519 (11th Cir.1997). District courts in two additional Circuits have likewise held that *contra proferentem* does not apply when an ERISA decisionmaker's decision is being reviewed deferentially. *See* 3d Circuit, *Friends Hosp. v. MetraHealth Service Corp.*, 9 F.Supp.2d 528, 531 (E.D.Pa.1998) (refusing to apply *contra proferentem* where court found that Plan conferred discretion); 6th Circuit, *Baptist Mem. Hosp. v. Marsaw*, 13 F.Supp.2d 696, 702 (W.D.Tenn.1998) (*citing Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 (6th Cir. 1992)) (deferring to ERISA plan administrator's reasonable interpretation of ambiguous plan term despite beneficiary's offer of conflicting reasonable interpretation of same term)).[9] *But see* 11th Circuit, *Calhoun v. Complete Health Care, Inc.*, 860 F.Supp. 1494, 1499 (S.D.Ala.1994) (("Because the policy appears to provide coverage under the chemotherapy and blood-derivatives provisions and does not clearly exclude coverage elsewhere, it must be interpreted in favor of the plaintiff").

The plaintiff's memoranda state without qualification that the rule of *contra proferentem* applies in the ERISA context. As seen from the above decisions, this is an incorrect statement of the law in most circuits to address the issue. The plaintiff ignores the distinction that courts to address the issue have drawn between cases where the decisionmaker has discretion (arbitrary and capricious review) and cases where the decisionmaker lacks discretion (*de novo* review). The plaintiff offers no reason to believe that the Court of Appeals for the D.C. Circuit would depart from the consensus view that *contra proferentem* does not apply under arbitrary and capricious review. Nor does this court's own consideration of the issue suggest that the D.C. Circuit would depart from that consensus. Indeed, this court finds persuasive the reasoning of those courts which have held *contra proferentem* inappropriate under arbitrary and capricious review. As the Court of Appeals for the Seventh Circuit aptly explained,

> When the administrators of a plan have discretionary authority to construe the plan, they have the discretion to determine the intended meaning of the plan's terms. In making a deferential review of such determinations, courts have no occasion to employ the rule of *contra proferentem*. Deferential review does not involve a construction of the terms of the plan; it involves a more abstract inquiry—the construction of someone else's construction. Because this case engages us in this more abstract exercise, we will not apply the rule.

*Morton v. Smith*, 91 F.3d 867, 871 n. 1 (7th Cir.1996). Indeed, "the arbitrary and capricious standard of review would have little meaning if ambiguous language in an ERISA plan were construed against the [plan decisionmaker]." *Cagle v. Bruner*, 112 F.3d 1510, 1519 (11th Cir.1997). Lastly, the court notes that it has previously

---

against the drafter."). *A fortiori* the First Circuit would not apply *contra proferentem* when deferential review is employed.

9. The Fifth Circuit takes what appears to be a unique, "middle" approach to applying *contra proferentem* in deferential-review ERISA cases. *See Spacek v. Maritime Ass'n. ILA Pension Plan*, 134 F.3d 283 (5th Cir.1998). The Court of Appeals there applies the rule to presume that the ERISA decisionmaker "did not adopt the legally correct interpretation of

[the plan's] terms." *See id.* at 299. Under the "two-tiered" review employed there, the court then proceeds to inquire whether the plan's legally incorrect interpretation constituted an abuse of discretion. *See id.* This court finds no authority, however, that the two-tiered analysis of the Fifth is employed in this Circuit. In any event, the court notes that even the Fifth Circuit's approach does not require that the claimant prevail after *contra proferentem* is applied.

found a traditional rule of contract construction to be inapplicable in the ERISA context when the arbitrary and capricious standard of review is employed. *Cf. Donovan v. Carlough*, 576 F.Supp. 245, 248 (D.D.C.1983) (court must apply arbitrary and capricious standard in ERISA case rather than "plain meaning" rule of construction).

In short, this court joins numerous circuits in holding that the contract construction rule of *contra proferentem* does not apply when an ERISA decision is reviewed under the arbitrary and capricious standard.[10] Accordingly, the court will not invoke that rule to automatically favor the plaintiff's interpretation of what constitutes a "physical" disability under the Fannie Mae–Unum policy. The court will consider the evidence proffered in support of the defendants' classification of the plaintiff's disability as "mental" to determine whether that classification was arbitrary and capricious, without reference to *contra proferentem.*

### ii. Evidence Tending to Support Classification of Bipolar Disorder as "Mental" Disability

As discussed above, Unum acted as claims administrator for Fannie Mae's long-term disability plan. When reviewing the plaintiff's claim for disability benefits, Unum's claims specialist obtained the evaluation of a staff psychiatrist, who concluded that the plaintiff had a mental illness. *See* Donelli Dec. ¶¶ 1, 3, 5–6. Specifically, the staff psychiatrist, a medical doctor specializing in psychiatry and emergency medicine, concluded that the plaintiff's bipolar disorder satisfied the Diagnostic and Statistical Manual of Mental Disorders criteria for psychiatric illness. *See* Haines Decl. ¶¶ 1, 5–6.

The policy defines "mental illness" as "mental, nervous or emotional diseases or disorders of any type." Based on the staff psychiatrist's report and on the claims specialist's understanding that the policy provision regarding mental illness applies to those conditions identified in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), the claims specialist determined that the plaintiff fell within the 24–month limitation applicable to benefits for mental disabilities. *See* Donelli Dec. ¶ 6.

The claims specialist cleared his determination to classify the plaintiff's disorder as mental with a "fail safe" panel, which consisted of the manager on duty and a vocational expert. *See* Donelli Dec. ¶ 7. When the panel agreed that the medical information supported the conclusion that the plaintiff's disability fell within the policy's definition of "mental," Unum notified the plaintiff of the policy's 24–month mental illness limitation. *See id.* ¶¶ 7–8.

### iii. Other Sources' Classification of Bipolar Disorder as "Mental" Disability

The court has considered the plaintiff's evidence and affidavits in support of the view that bipolar disorder is better classified as a physical disability. The court notes, however, that in addition to the evidence and expert judgment Unum relied on in making the classifica-

---

**10.** This court has never held to the contrary. The plaintiff relies on the decision of another Judge of this District in *Germany v. Operating Engineers Trust Fund*, 789 F.Supp. 1165 (D.D.C.1992). There, the court did not need to decide whether the *contra proferentem* rule applies in the ERISA context, because it found that the disputed policy provision was "clear on its face." *See Germany*, 789 F.Supp. at 1169. Nonetheless, the court stated in dicta that "even if the Court were to find its language ambiguous, the rule of *contra proferentem* would require that ambigui-

ties in the plan be construed against the Fund." *Id.* In addition to the fact that this pronouncement was mere dicta, *Germany* was decided without the benefit of the numerous decisions which have taken the opposite view since it was issued. This court surmises that the learned judge who issued *Germany* would not make the same pronouncement today in light of the intervening persuasive authorities to the contrary. To the extent that *Germany*'s dicta is still relevant, this court respectfully disagrees.

tion, its classification of bipolar disorder as a "mental" disability is consistent with the views of many courts and medical authorities. To interpret an incompletely undefined term in an insurance policy, the court may refer to state law and to the common law created by other federal courts. *Baker v. Provident Life & Acc. Ins. Co.*, 171 F.3d 939, 942 (4th Cir.1999). The court has referred to these sources, as well as to basic medical texts cited in the decisions, and notes that there is authority for classifying bipolar disorder as a "mental" illness as Unum did. This court has referred to "a mental illness diagnosed as bipolar disorder." *See Liff v. Secretary of Transportation*, 1994 WL 579912, *5 n. 6 (D.D.C. 1994). Another district court has noted that bipolar disorder is "an affective disorder characterized by the alter[n]ation of manic and depressive states." *Attar v. Unum Life Ins. Co.*, 1997 WL 446439, *1 n. 2 (N.D.Tex.1997). *Accord Butler v. Apfel*, 189 F.3d 472, 1999 WL 595335, *2 n. 8 (9th Cir.1999) ("Bipolar disorder is a mood disorder characterized by the occurrence of both manic and depressive episodes.") (citing Stedman's Medical Dictionary, 460, 508, 1061 (26th ed.1995)). Mania, which is an aspect of bipolar disorder, is classified as "an emotional disorder...." *See* Stedman's at 1061.

Moreover, bipolar disorder is considered a "mental impairment" under the Americans with Disabilities Act, which defines mental impairment to include "[a]ny mental or psychological disorder, such as ... emotional or mental illness...." *See Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 152 (3d Cir.1999) (citing 29 C.F.R. § 1630.2(h)(2)); *accord Bultemeyer v. Fort Wayne Community Schs.*, 100 F.3d 1281, 1284 (7th Cir.1996); *Reynolds v. United of Omaha*, 166 F.3d 1210, 1998 WL 841568, *2 (plaintiff had a "long history of serious mental illness (diagnosed as either schizophrenia or bipolar disorder)"). Lastly, in an ERISA case similar to the instant case, a district court found that bipolar disorder is a mental illness, notwithstanding that it may have an organic or "physical" cause.

*See Rucker v. Regit Sponsored Group Long Term Disability Ins. Plan*, 1994 WL 411738, *2 (N.D.Ill.1994). This last decision is significant because the plaintiff in *Rucker*, like the plaintiff here, asserted that bipolar disorder cannot reasonably be called a mental disorder because there is evidence that it has organic, or physical causes (an imbalance of neurotransmitters). Like the administrator in *Rucker*, Unum here must have determined that bipolar disorder's allegedly physical cause is "not a controlling factor under the Plan." Like the policy in *Rucker*, the policy here specifically states that the 24–month mental-illness limitation clause applies to "mental, nervous or emotional diseases or disorders *of any kind*." *See* Policy section IV, Benefits. Mental Illness Limitation (emphasis added). The policy's definition of mental illness makes no distinction between mental disabilities with organic causes and mental disabilities without organic causes, and the plaintiff has not pointed to any provision which suggests that such a distinction was intended. Accordingly, this court sees no basis for finding that Unum acted arbitrarily in declining to read a "no-organic-cause" proviso into the policy's definition of mental illness.

### iv. *Holding on Count 3*

Based on the record before it, this court can not reasonably find that Unum's classification of bipolar disorder as a "mental" disability was so unreasonable as to be arbitrary and capricious. The court is mindful of the evidence submitted by the plaintiff consistent with her theory that her disability should be classified as physical. In light of the evidence presented by the defendants to support their classification, however, the plaintiffs' evidence does not render the defendants' classification "unreasonable." The facts indicate that Unum made its determination based on the underlying opinion of a trained medical professional, the use of the criteria established in the DSM and review by the "fail safe panel." Moreover, Unum's classifica-

tion of bipolar disorder as "mental" is consistent with other decisions and with some federal and local statutes. For these reasons, the court concludes, "it is clear that an administrator or fiduciary, free of Unum's conflict of interest, would have been more than reasonable in exercising its discretion to deny ... benefits under the circumstances of this case." *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 233 (4th Cir.1997).

In conclusion, "even if [this court] would not have interpreted the plan document to deny benefits ... under the circumstances presented in this case, [the court] cannot say that it was either arbitrary or capricious for [Unum] to do so." *Bower v. Buckeye Village Market Employee Benefit Plan,* 182 F.3d 916, 1999 WL 397962, *2 (6th Cir.1999). Therefore, the court may not overturn Unum's decision. *See Pitney Bowes,* 952 F.2d at 1452.

Accordingly, the court will grant summary judgment to defendant Unum on count 3. In addition, because the court concludes that it cannot overturn the decision to classify Ms. Fitts's disability as mental, the plaintiff cannot recover against Fannie Mae, either.[11] Therefore, the court will grant summary judgment on count 3 to Fannie Mae, as well.

### 2. Count Six—Common–Law Misrepresentation

■ Count 6 of the amended complaint asserts a claim for misrepresentation against Fannie Mae under District of Columbia law. In light of the court's decision to grant summary judgment to the defendants on the ERISA claim, this misrepresentation claim is the only claim left in the case. Consequently, there are no longer any claims over which this court has original jurisdiction.[12] "If the federal claims in a case are resolved before trial, the District Court ... may exercise its discretion to dismiss them without prejudice." *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 769 (D.C.Cir.1982); *accord GTE v. Ameritech,* 21 F.Supp.2d 27, 46 (D.D.C.1998). "If this action proceeded, the Court's sole function would be to apply state law." *Brown v. Gino Morena Enterprises,* 44 F.Supp.2d 41, 52 (D.D.C. 1999). In situations like these, the Supreme Court has directed, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, the state claims should be dismissed as well." (*United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Accordingly, the court declines to exercise supplemental jurisdiction over count 6.[13] *See* 28 U.S.C. § 1367(c)(3); *see, e.g., Goins v. Teamster Local 639,* 598 F.Supp. 1151 (D.D.C.1984) (dismissing state-law claims after granting summary judgment to de-

---

**11.** Accordingly, the court need not reach the other two grounds Fannie Mae advances in seeking summary judgment on count 3:(1) that an employer is not a proper defendant on a claim under 29 U.S.C. § 1132(A)(1)(B) to recover benefits under an ERISA plan; and (2) that the plaintiff has not asserted claims under either of the two ERISA provisions which might permit suit against Fannie Mae as a fiduciary of the ERISA plan. *See* Fannie Mae's Mot. for Summ.J. on Count 3 at 11–13, 13–16.

**12.** The plaintiff filed the *instant* action in this court under federal-question jurisdiction. There is no diversity between the plaintiff and defendant Fannie Mae. The plaintiff is a resident of the District of Columbia and Fannie Mae is a federally chartered corporation with its headquarters and principal place of business in the District. *See* Am.Compl. ¶¶ 4, 6, 7.

**13.** There would be no benefit to judicial economy in keeping the D.C. claim here. The claim was added to the complaint by recent amendment and so was not addressed in this court's March 1999 Opinion. Moreover, no discovery has taken place with respect to the misrepresentation claim. *See Brown,* 44 F.Supp.2d at 53 ("Accordingly, in light of the preference for having state courts apply state law and the lack of any gain to judicial economy by the retention of these claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for defamation....").

fendants on ERISA claim). The plaintiff's misrepresentation claim will be dismissed without prejudice to the plaintiff's right to re-file in D.C. Superior Court.

## IV. CONCLUSION

For the foregoing reasons, the court grants summary judgment to the defendants on count 3 and dismisses count 6 without prejudice. An appropriate Order consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 31st day of August, 1999.

### ORDER

**Granting Summary Judgment to the Defendants on Count 3; Declining Supplemental Jurisdiction over Count 6; Denying Without Prejudice the Motions as to Count 6**

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously executed this 16th day of August, 1999, it is

**ORDERED** that defendant Unum Life Insurance Company of America's motion for summary judgment on count three (ERISA) [No. 48] shall be and hereby is **GRANTED;** and it is

**FURTHER ORDERED** that defendant Federal National Mortgage Association's motion for summary judgment on count three [No. 55–1] shall be and hereby is **GRANTED;** and it is

**FURTHER ORDERED** that the plaintiff's motion for summary judgment on count three (ERISA) [No. 53] shall be and hereby is **DENIED;** and it is

**FURTHER ORDERED** that, in accordance with 28 U.S.C. § 1367(c)(3), this court declines to exercise supplemental jurisdiction over the plaintiff's claim for misrepresentation under District of Columbia law (count 6); and it is

**FURTHER ORDERED** that defendant Federal National Mortgage Association's motion for summary judgment on count six

[No. 55–2] shall be and hereby is **DENIED, WITHOUT PREJUDICE** to filing in the Superior Court of the District of Columbia; and it is

**FURTHER ORDERED** that the plaintiff's motion for summary judgment on count six [No. 60] shall be and hereby is **DENIED, WITHOUT PREJUDICE** to filing in the Superior Court of the District of Columbia.

**SO ORDERED.**