Rzasa v. Reliance Standard Ins.     CV-99-215-JD   03/21/00
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Beverly A. Rzasa

      v.                              Civil No. 99-215-JD
                                      Opinion No. 2000 DNH 075
Reliance Standard
Life Insurance Company


                            O R D E R


      The plaintiff, Beverly A. Rzasa, brought suit pursuant to

the Employee Retirement Income Security Act ("ERISA") to recover

long term disability benefits under a group plan provided by her

employer, First Securities Services Corporation, through the

defendant, Reliance Standard Life Insurance Company.  The parties

have filed cross-motions for summary judgment.  Their motions are

resolved as follows.



                       Standard of Review

      Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The record evidence is taken in the light most favorable

to the nonmoving party.  See Rodriguez-Abreu v. Chase Manhattan

<u>Bank</u>, 986 F.2d 580, 583 (1st Cir. 1993). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 26 (1st Cir. 1995). When parties file cross motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn." <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997).

<u>Background</u>[1]

Beverly Rzasa worked as a security account manager at First Security Services Corporation from April of 1982 until February of 1997, when she stopped working due to severe muscle and joint pain, impaired movement, and numbness. She applied for long-term disability benefits under her employer's plan with Reliance Standard Life Insurance Company. Her claim was denied on July 11, 1997, and on appeal the denial was affirmed on December 2, 1997.

---

[1]The background information is taken from the parties' factual statements, as supported by their references to the record.

2

Rzasa first saw Dr. Gino Ippolito on December 31, 1996. Dr. Ippolito's examination notes say that Rzasa had multiple areas of edema (swelling) and complaints of pain when walking or grasping. He also notes "obvious arthritis." He prescribed a trial course of medication.

Rzasa returned to Dr. Ippolito on February 14 with generalized joint and muscle pain and swelling in her hands and feet. Dr. Ippolito ordered laboratory tests for lupus and rheumatoid arthritis, and the results were negative. He instructed her to continue the prescribed medications. Rzasa met with Dr. Ippolito again on February 20 when he discussed the test results with her and advised her to continue the medications and to start an exercise program. Dr. Ippolito also noted that Rzasa was not able to work at her job due to a loss of motion and pain.

In his office notes for Rzasa's two visits in March, Dr. Ippolito wrote that she had arthritic symptoms in all joints on March 7 for which he prescribed additional medication and on March 21 he found that she had severe swelling in both hands. On April 14, Dr. Ippolito found that Rzasa maintained typical changes due to arthritis, and on May 1, he found her usual edema and joint pain. Dr. Ippolito noted on June 2 that Rzasa had improved on medication.

Dr. Ippolito completed a physician's statement for Rzasa's

3

benefits claim on May 20, 1997. He gave a primary diagnosis of polyarthritis and degenerative arthritis with symptoms of pain and loss of motion. He listed Rzasa's medications as Naprelan 500 mg, Fioricet, and Flexeral. In the section on the patient's restrictions and limitations, Ippolito marked "none" as to the exertional level of work Rzasa was able to do. He indicated that Rzasa could stand and drive for one to three hours in an eight hour day, but could not sit or walk at all. He also indicated that she could bend or use her feet fifty percent of the time in a work day, but could not squat, climb, reach, kneel, or crawl.

Dr. Ippolito wrote a letter on August 1, 1997, in support of Rzasa's appeal of the denial of her application for long-term disability benefits. In the letter, Dr. Ippolito said that Rzasa continued "to demonstrate clinical Rheumatoid Arthritis along with Osteoporosis," despite the negative results on her testing because, he said, only twenty percent of those with rheumatoid arthritis test positively. He noted that Rzasa had "spasms of her posterior cervical and lumbosacral spine," and "edema and decrease[d] motion in both hands, knees and hips, precluding the possibility of continued ability to perform gainful employment or her daily chores." Dr. Ippolito wrote that he would perform more studies and tests and would obtain further studies and consultation. He concluded, "I fail to see her working with such

4

evident clinical musculoskeletal disease." Rzasa did not submit any further medical information.

Reliance Standard scheduled an independent medical examination with Dr. Stuart Glassman, which was conducted on November 4, 1997. In his report, Dr. Glassman notes that Rzasa had previous spinal surgery in 1971 and 1995 and notes her complaints of progressive pain and Dr. Ippolito's opinion that she was not able to return to work. Rzasa reported to Dr. Glassman that she had neck and shoulder pain, and pain in her back, arms and knees, that she was able to sit and stand for forty-five minutes, and that she had not had physical therapy or regular exercise in the past six months.

On examination, Dr. Glassman found no edema or atrophy but did find tender points throughout her neck, upper and lower back, bilateral hips, knees, elbows, and tibias. Based on the tender points, he diagnosed the possibility of myofascial pain and/or fibromyalgia.

Dr. Glassman noted that she was able to move from lying down to sitting, and was able to stand and walk although she complained of pain when walking. He found that she had a decreased range of motion because she was guarding movement during the examination. He concluded that her current functional status cleared her for work at the sedentary level with lifting

5

limited to less than ten pounds. He recommended an aggressive four- to six-week exercise program to increase Rzasa's overall endurance and strength and a functional capacity evaluation to determine her work capabilities after completing the program.

Dr. Glassman also completed a physical capacities assessment form in which he marked that Rzasa could stand and sit for two hours in an eight-hour day and could walk or drive for one hour. He noted that she should be able to change from sitting to standing each hour. He found that she could occasionally bend, squat, climb, reach, kneel, crawl, and use her feet. He found no limitations in grasping, pulling, or fine manipulation. He limited her ability to lift to a maximum of ten pounds.

Richard Barry, the manager of the human resources department at First Security, completed the employer's statement for Rzasa's claim, which included a job analysis form. On the job analysis form, Barry provided information about the physical requirements of Rzasa's job. Barry indicated that Rzasa's job required occasional standing, walking, sitting, stooping, kneeling, crouching, and climbing stairs. He indicated that the job did not require balancing, crawling, reaching or working overhead, climbing ladders, pushing, pulling, or lifting. He also marked that the job could be performed by alternating sitting and standing and could be modified to accommodate her disability.

6

Rzasa's claim for benefits was denied on July 11, 1997, because "Dr. Ippolito's records do not contain any objective medical documentation to support a Total Disability as defined above" and because the file indicated that Rzasa stopped work on February 5, 1997, while her medical records did not show a change in her condition at that time that indicated work limitations. On appeal, the denial was affirmed based on noted inconsistencies in Dr. Ippolito's assessment of Rzasa's capabilities, Dr. Ippolito's inconsistency with Rzasa's capabilities as she reported them to Dr. Glassman, and Dr. Glassman's assessment of her capabilities in light of the description of her job requirements provided by her employer.

## Discussion

Rzasa seeks a judgment pursuant to 29 U.S.C.A. § 1132(a) to recover long-term disability benefits that she contends are due her under the ERISA-qualified plan provided by Reliance Standard. In the alternative to summary judgment in her favor, Rzasa asks that Reliance Standard's motion for summary judgment be denied and that she be permitted to submit additional evidence in support of her claim for benefits. Reliance Standard moves for summary judgment in its favor, asserting that the decision to deny Rzasa benefits was properly made.

A.  Deferential or De Novo Review

When a plan beneficiary challenges a denial of benefits from an ERISA-regulated plan, the decision is reviewed under the de novo standard unless the plan gives the administrator discretionary authority to determine eligibility or to construe terms of the plan.  See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan confers the requisite discretionary authority, the court reviews an administrator's decision under a deferential arbitrary and capricious standard. See id.; see also Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998).  Under applicable federal law, "a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review."  Rodriquez-Abreu, 986 F.2d at 583.

The applicable provision of the Reliance Standard policy provides:  "We will pay a Monthly Benefit if an Insured: . . . (4) submits satisfactory proof of Total Disability to us."  Total disability is defined in the policy as the inability to "perform the material duties of his/her regular occupation" for the specified period.  Reliance Standard contends that the plan confers discretionary authority on it to decide whether beneficiaries are entitled to long-term benefits.  Rzasa contends

8

that the language is ambiguous and therefore does not clearly grant discretionary authority on the plan administrator to made the benefits determination.[2]

The First Circuit has not had an opportunity to construe similar plan language, but has determined that plan language was insufficient that "stated only that the administrator had 'exclusive control and authority over administration of the Plan.'" Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (discussing Cooke v. Lynn Sand & Stone Co., 70 F.3d 201, 204 (1st Cir. 1995)). Courts that have considered the same or similar language in ERISA plans have come to different conclusions as to whether the language confers discretionary authority. See, e.g., Fitts v. Federal Nat'l Mortgage Assoc., 77 F. Supp. 2d 9, 17-18 (D.D.C. 1999) (citing and discussing cases); Metropolitan Life Ins. Co. v. Socia, 16 F. Supp. 2d 66, 69 (D. Mass. 1998) (holding similar language invoked discretion); Cleary v. Knapp Shoes, Inc., 924 F. Supp. 309, 313 (D. Mass. 1996) (holding similar language did not invoke discretion). Very recently, however, the Seventh Circuit has joined the Second and Ninth Circuits in

---

[2]The parties in this case focus on whether the plan grants the administrator discretion in making the factual determination of disability rather than in the interpretation of plan terms. Cf. Kinstler, 181 F.3d at 249-50 (explaining different grants of discretion).

deciding that "language in plan documents to the effect that benefits shall be paid when the plan administrator upon proof (or satisfactory proof) determines that the applicant is entitled to them" is ambiguous as to the discretion of the plan administrator and requires de novo review of the challenged decision. Herzberger v. Standard Ins. Co., ___ F.3d ___, 2000 WL 202653 at *4 (7th Cir. Feb. 23, 2000) (and citing other cases); see also Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251 (2d Cir. 1999); Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999). But see Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555-58 (6th Cir. 1998) (holding similar language conferred discretion).

This court is persuaded to follow the well-reasoned analyses of the Seventh, Second, and Ninth Circuits' opinions, concluding that plan language requiring satisfactory proof is not a sufficiently clear invocation of discretionary authority to warrant deferential review. The court is also swayed by the Seventh Circuit's recognition that a uniform national standard for interpreting plan language would be beneficial in ERISA cases. See Herzberger, ___ F.3d at ___, 2000 WL 202653 at *1. Therefore, the Reliance Standard policy provision ("We will pay a Monthly Benefit if an Insured: . . . (4) submits satisfactory proof of Total Disability to us.") is not a sufficiently clear

10

statement of discretionary authority to invoke the arbitrary and capricious standard of review. Reliance Standard's decision to deny benefits to Rzasa is subject to de novo review.

The scope of review under the de novo standard also remains an unsettled question in this circuit. See Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 833-35 (1st Cir. 1997). Other courts have interpreted the scope of de novo review to permit submission of evidence that was not part of the administrative record. See, e.g., Grady v. Paul Revere Life Ins. Co., 10 F. Supp. 2d 100, 110-12 (D.R.I. 1998) (citing and discussing cases). Most of the courts that permit supplementation of the record for purposes of de novo review require a showing of good cause or that additional evidence is necessary for an adequate de novo review. See, e.g., Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998); Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 943-44 (9th Cir. 1995); Casey v. Uddeholm Corp., 32 F.3d 1094, 1098-99 (7th Cir. 1994); Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1025 (4th Cir. 1993); Hotaling v. Teachers Ins. & Annuity Ass'n of America, 62 F. Supp. 2d 731, 738 (N.D.N.Y. 1999). Therefore, Rzasa may supplement the administrative record but only to the extent she establishes good cause for considering new evidence.

11

Rzasa asks that she be allowed to supplement the record by submitting expert testimony from Dr. Ippolito to further explain and interpret his opinion that Rzasa is disabled and the Social Security Administration's disability determination on her application for benefits. Rzasa provides no explanation for what Dr. Ippolito's expected testimony would add to the opinions he has already provided. With respect to the SSA determination, Rzasa notes the difference in the burden of proof in an SSA case, but ignores the differences between the evidence that she presented in that proceeding and here. Based on the present showing, Rzasa has not established that good cause exists to permit the addition of that new evidence to the record.

B. The Summary Judgment Motions

Both parties have moved for summary judgment. The record presented for summary judgment demonstrates a material factual dispute between Dr. Ippolito's opinion and Dr. Glassman's opinion of Rzasa's condition and capabilities. If Dr. Ippolito's opinion is credited, Rzasa is totally disabled and unable to perform her material job functions as described in the job analysis form. If Dr. Glassman's opinion is credited, Rzasa retains the ability to perform her job, particularly in light of the availability of job modification. A material factual dispute, such as exists in this

12

case, cannot be resolved on summary judgment.  See <u>Casey</u>, 32 F.3d at 1099.  Therefore, neither Rzasa nor Reliance Standard has established a basis of undisputed material facts in support of summary judgment.

<u>Conclusion</u>

For the foregoing reasons, the motions for summary judgment (documents no. 17 and 22) are denied.  The parties are urged to promptly explore the possibilities of settlement in this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 21, 2000

cc:  Eugene A. DiMariano Jr., Esquire
     Kevin C. Devine, Esquire
     Joshua Bachrach, Esquire

13